IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of Personal Restraint of | ) | |
| | ) | No. 39015-2-III |
| GORDON JAMES ENNIS. | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

FEARING, J. — A jury found Gordon Ennis guilty of rape in the second degree. In an unpublished opinion, this court affirmed the conviction in *State v. Gordon James Ennis*, No. 36359-7-III, 16 Wn. App. 2d 1079, 2021 WL 1035960 (2021). We now decline Ennis' personal restraint petition. With the petition, Ennis seeks a new trial based on new evidence, ineffective assistance of counsel, and instructional error. We decline to review the merits of some of Ennis' contentions because he raised them during his appeal. We reject other contentions on their merits.

The attorney who filed the personal restraint petition on behalf of Gordon Ennis unfortunately died after the filing of all pleadings. We thank counsel Laura Chuang for her prompt substitution on behalf of Ennis and the excellent representation she provided thereafter.

FACTS

The personal restraint petition arises from a conviction against Gordon Ennis for raping a coworker at a drinking party in October 2015. We pilfer some of the facts from

this court's unpublished decision on appeal. *State v. Gordon James Ennis* No. 36359-7-III (Wash. Ct. App. Mar. 18, 2021). Ennis adds to the facts by declarations filed in support of his petition by himself, a private investigator, an expert attorney, and a forensic psychologist.

On the night of October 24/25, 2015, K.S., a probationary officer with the Spokane Police Department (SPD), attended a party at the home of Doug and Heather Strosahl. Doug Strosahl also served in the Spokane Police Department. K.S. claims that she consumed too much alcohol at the party and, while incapacitated, Gordon Ennis, a superior officer in the police department, raped her.

Gordon Ennis testified at trial in his defense. He admitted to engaging in sexual intercourse with K.S. at around 2:45 a.m. on October 25, but avowed the contact to be consensual. Ennis testified that, after K.S. came into the kitchen at around 2:30 a.m. and hugged him, she pulled on his waist toward her bedroom and they walked down the hall together. She was not stumbling, swaying, or slurring her words. According to Ennis, when the two were halfway down the hall, K.S. leaned against the wall, grabbed him around the rear end, pulled his hips close to her, and embraced him. Once in a bedroom together, K.S. put her legs around him, stroked his thigh, and engaged in mutual genital touching. Ennis continued that, when he rubbed K.S.'s vagina through the outside of her sweatpants, she pushed down her pants, grabbed his wrist, and moved his hand between

her legs. He inserted a finger in her vagina which "continued for a little bit of time." Report of Proceedings (RP) at 1429; Resp't's Attach. A at 12-13.

In December 2015, the State charged Gordon Ennis with second degree rape for engaging in sexual intercourse with K.S. when she was incapable of consent by reason of being physically helpless or mentally incapacitated. The first trial commenced in June 2017.

On December 4, 2015, the State provided the defense with over 750 pages of initial discovery materials. The discovery included a document entitled, "Citywide Sexual Assault Documentation Form." Resp't's Attach. B at 4. The form contained information that K.S. provided at the hospital on October 25, 2015. On the form, K.S. stated that, at age 16, she was "[a]lmost raped," that she was currently seeing a mental health counselor, and was prescribed Cymbalta. Resp't's Attach. B. at 4. The form did not expressly link the counseling to the incident at age 16.

In May 2017, during a pretrial proceeding, Robert Cossey, Gordon Ennis' lawyer, and the State questioned each other about plans for trial testimony from Doug Strosahl. The trial court asked attorney Cossey of any potential problems concerning Strosahl being a witness. Cossey replied: "'I gave my word to Mr. [Chris] Bugbee [Strosahl's lawyer] I would not disclose that.'" Resp't's Attach. A at 9 (quoting RP (May 19, 2017) at 15). We do not know the identity of "that" to which Cossey pledged not to disclose. The trial court set a hearing for May 25 because of a need to resolve problems attended to

3

Cossey being defense counsel and his relationship with Doug Strosahl. The court

remarked: "'I want Bugbee here.'" Resp't's Attach. A at 9 (quoting RP (May 19, 2017)

at 18-19).

On May 25, 2017, Doug Strosahl attended the superior court's scheduled hearing

with new counsel, Joseph Sullivan, instead of with Chris Bugbee. During the hearing,

Robert Cossey informed the court that, because Sullivan substituted as counsel for

Bugbee, Cossey's former understanding with Bugbee as to how to handle Strosahl as a

witness fell moot. Sullivan had informed Cossey that Strosahl intended to testify

consistent with the police report. Sullivan echoed Cossey's representation and stated that

Strosahl would not assert the Fifth Amendment privilege if subpoenaed to testify at trial.

On June 2, 2017, the State filed motions in limine:

> 2. Outside the presence of the jury and prior to the start of the trial,
> the State requests that the Court exclude the following as inadmissible
> under ER 401-403.
> a. Any reference to the victim being a prior victim of sexual assault.
> b. Any reference related to the victim's mental health.
> c. Any reference to the victim's use of medication.
> d. Any reference to the victim's probationary employment status at
> the time of the incident
> e. Any reference to the victim being a "slut."
> f. Any reference as to the victim "getting what she deserved."
> g. Prohibit the defense calling the defendant Officer/Sergeant Ennis
> . . . .
> 4. Prohibit defense counsel from asking victim about other intimate
> relationships, sexual experiences, dating relationships with co-workers,
> sexual practices, and use of birth control.

>     5. Prohibit Doug Strosahl from expressing an opinion as to the
> credibility of the victim's disclosure on October 25, 2015.
>     . . . .
>     6. Prohibit Doug Strosahl from stating his opinion as to the "type of
> hug" that the victim gave the defendant prior to being sexually assaulted.
>     . . . .
>     11. To exclude any references to "Project Innocence" or similar
> projects and prevent the defense from attempting to illicit [sic] promises
> during jury selection.

Petitioner's Exhibit (Ex.) G at 2-6. The State listed the subject matters found in

paragraphs 2 a through c and 4 because of its disclosure of material about K.S. in

December 2015. Gordon Ennis, through counsel Robert Cossey, objected to motions 5

and 6.

During jury selection for the June 2017 trial, venire members reported on a juror

questionnaire that they had seen pretrial publicity concerning the prosecution. Some

venire members even mentioned that they read or watched, during the voir dire process,

news coverage on the case. The trial court granted a defense motion for a mistrial.

The parties filed a joint recommendation for a change of venue in August 2017.

Neither party scheduled the change of venue recommendation for hearing. The State no

longer advanced a venue move when, in February 2018, a new trial judge presided at a

status conference for a trial set to begin three weeks later in Spokane. During the

conference, defense counsel Robert Cossey told the court that Gordon Ennis was not

withdrawing his venue change motion but wished to determine if a fair jury could be

seated in Spokane before renewing the request. The court agreed to treat the motion as reserved until after voir dire.

During a pretrial hearing, the trial court granted the State's motion in limine 2, which listed seven areas of forbidden testimony. During the same hearing, counsel discussed motion number 5 that sought exclusion of any opinion from Doug Strosahl as to the credibility of a statement made by K.S. to Strosahl the morning of the alleged rape:

> MS. FITZGERALD [State's Attorney]: I think that—I'm concerned that there will be questions. The first reporting—
> Your Honor, so you know the factual backdrop, the first reporting that the victim makes—or she talks to another witness. But in the morning after this event is alleged to have occurred, she speaks with Doug Strosahl, who is the witness this motion pertains to. In his interview with defense counsel and myself, you know, I think there was some questions, and it's what prompted the state's [sic] concern, that making a conclusion that, you know, for example, "I didn't do anything, because I didn't think she was reporting that it was a sexual assault." Those questions are inappropriate. They go to the ultimate issue for the jury, and they potentially comment on the veracity of the victim.
> MR. COSSEY: I—I can't ask any witness to give an opinion on the veracity—
> THE COURT: Right.
> MR. COSSEY: —of another witness. So I'm not going to try to do that intentionally.
> THE COURT: Well, I think it's a "You didn't report it, did you?" and he'd say no. And so you're leaving the jury—I mean, I don't know where you're intending to go. I presume that this motion would cover that kind of a situation too.
> MR. COSSEY: Yeah, I—I'm not in the habit in my trials to elicit—
> THE COURT: All right.
> MR. COSSEY: —opinion testimony on veracity. That—
> THE COURT: So we—
> MR. COSSEY: The rules don't allow it.
> THE COURT: We agree, then, that this one is granted, right?

> MR. COSSEY: Yeah.
> MS. FITZGERALD: We agree there won't be questions about Mr. Strosahl's opinion of whether it was consensual or not; opinion whether it was a crime; opinion whether the victim was being truthful, confused, whatever it might be. Those are the sole province of the jury.
> THE COURT: Are you okay with that?
> MR. COSSEY: But I—no, I'd love to be able to ask that, but I don't think it's allowed.
> THE COURT: All right, great. So that's—that's granted, then.

RP at 27-29. The State then withdrew motion in limine 6 that sought to exclude testimony from Strosahl about the nature of a hug that K.S. gave Gordon Ennis before the alleged assault.

Later during the pretrial hearing, the court and counsel discussed the State's motion in limine 11, which sought to exclude any references to Project Innocence or similar projects and to prevent the defense from attempting to elicit promises from venire people during jury selection:

> MS. FITZGERALD: Number 11, I believe, was agreed to as well.
> THE COURT: Okay, that's granted. I've never heard Mr. Cossey talk about Project Innocence, so not likely to start now.
> MS. FITZGERALD: And I don't know if Mr. Cossey—I've had this now recently, Your Honor, with just the current news coverage in this area. I don't know if Mr. Cossey has thought about or wants to address any mention of things like the *MeToo* campaign or the *Stand Up* [sic] campaign or things that are currently going on. I've recently had a trial where that was an issue. The state has no intention of getting into that. It would be improper. So I don't know if the Court wants to include that in there or just leave it to counsel.
> MR. COSSEY: Without showing my political naivete, I don't even know what *MeToo* is.
> MS. FITZGERALD: Okay.

MR. COSSEY: But maybe I'll say it now but I don't know what it is.

MS. FITZGERALD: The way that it occurred in the other case, your Honor, is that defense counsel felt that they wanted to ask whether or not that kind of climate that's going on right now made the jurors more likely to convict or to feel like they had new duties because of those campaigns.

MR. COSSEY: I wouldn't be able to ask that question with a straight face.

THE COURT: All right. So you're—you're stipulating that, right?

MR. COSSEY: Well, *MeToo*. I don't know what the other one is either.

MS. FITZGERALD: *StandUp* is the other campaign.

THE COURT: And *Time's Up*.

MR. COSSEY: *Time's Up*, oh.

THE COURT: Go—go research those.

MR. COSSEY: I guess I need to.

THE COURT: And don't use them.

MR. COSSEY: That's kind of embarrassing but I don't . . .

THE COURT: That's fine. So that—that's stipulated. It's granted.

RP at 34-36.

Gordon Ennis, through attorney Robert Cossey, waived an opening statement at the beginning of the trial and at the beginning of the defense's case.

Among others instructions, the trial court delivered the following two jury instructions. Instruction 10 read:

In order to convict a person of second-degree rape, it shall not be necessary that the testimony of the alleged victim be corroborated.

RP at 1487. Jury instruction 11 declared:

It is a defense to a charge of rape in the second degree that at the time of the act the defendant reasonably believed that [K.S.] was not mentally incapacitated or physically helpless. The defendant has the

8

burden of proving this defense by a preponderance of the evidence. "Preponderance of the evidence" means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true.

       If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty as to this charge.

RP at 1487-88.

The jury found Gordon Ennis guilty of second degree rape.

After entry of the verdict, Gordon Ennis retained new counsel, Mark Vovos. Ennis, through Vovos, filed a motion for a new trial on several grounds, one being ineffective assistance of counsel by Robert Cossey. According to Ennis, Cossey developed a conflict of interest that negatively impacted Ennis' case.

In support of his new trial motion, Gordon Ennis submitted declarations of himself and his wife. Both averred that, in a meeting at Robert Cossey's office on November 2, 2015, Cossey told them that Doug Strosahl's lawyer, Chris Bugbee, had informed him that Strosahl had consensual sexual contact with K.S. at the Strosahls' party before the contact between K.S. and Ennis. According to Ennis and his wife, Cossey commented the Strosahl manually stimulated K.S.'s vagina and inserted his fingers into the organ. K.S. purportedly believed Strosahl to be Ennis. In their respective declarations, the husband and wife avowed that Cossey told them not to tell anyone. They nonetheless expected Cossey to use the information in Ennis' trial.

The State filed a motion for leave to depose Robert Cossey, while arguing that the declarations of Gordon Ennis and his wife waived any attorney-client privilege. The trial court authorized the State to interview Cossey, limited the scope of the privilege waiver, and granted Ennis' request for a protective order preventing disclosure of the information obtained from Cossey. The court authorized questioning of Cossey about information he received from Chris Bugbee, Cossey's decision not to use the information, and Cossey's conversations with the Ennises. During the deposition, Cossey disputed important aspects of the Ennises' declarations.

The trial court denied Gordon Ennis' motion for a new trial. The court sealed the State's opposition to Ennis' new trial motion, which attached a transcript of Robert Cossey's deposition, pending completion of Ennis' appeal and any retrial.

On appeal to this court, Gordon Ennis identified four primary issues and thirteen sub-issues. Ennis assigned error to jury instructions 10 and 11, claiming that the use of the instructions constituted a comment on the evidence and deprived him of his right to present a defense. Ennis claimed the State engaged in prosecutorial misconduct by commenting on his right to remain silent, by eliciting improper testimony about his right to remain silent, by vouching for K.S.' credibility, by impugning defense counsel, by commenting on a witness's credibility, by impermissibly expressing an opinion on Ennis' guilt by using the term "assault" nine times while questioning K.S., by violating a motion in limine, and by using impeachment evidence as substantive evidence. Ennis also

advanced the contention of ineffective assistance of counsel because attorney Robert

Cossey represented him while under a conflict of interest, failed to request a change of

venue, ignored the valid defense that Ennis reasonably believed K.S. was capable of

consenting to sexual intercourse, and failed to object to the State's alleged prosecutorial

misconduct. Finally, Ennis claimed cumulative error deprived him of a fair trial.

This reviewing court declined to review Gordon Ennis' assignment of error based

on Robert Cossey's failure to object to the State's alleged misconduct because Ennis

failed to sufficiently brief or argue the assignment. Otherwise, this court addressed all of

Ennis' arguments on the merits. This court recognized two debatable errors: the

prosecutor's statement when cross-examining a witness that argumentatively impugned

the witness' credibility and the prosecutor's impugning of defense counsel. Cossey

objected to both tactics of the prosecutor. Nevertheless, assuming error, the error did not

result in an unfair trial.

In support of his personal restraint petition, Gordon Ennis has asserted new

evidence, including declarations from Mel Taylor, a former detective for the city of

Spokane Police Department, forensic psychologist Robert Cosby, not to be confused with

Robert Cossey, attorney Steven Thayer, and Ennis. The declarations surround K.S.

allegedly possessing "issues" from "unresolved sexual assault cases" and purported

deficiencies in Robert Cossey's representation of Ennis.

In his declaration, Mel Taylor averred that, while employed as a Spokane Police Department detective, he performed background investigations on new hires and reserve officers. As part of the police officer application process, the applicant needed to undergo a psychological examination.

According to Mel Taylor, he learned of background investigations and examinations of K.S. This background included a psychiatric examination by the Spokane Police Department psychiatrist that mentioned "'unresolved sexual assault cases in her history.'" Pet'r's Ex. A at 2. As a result, the psychiatrist rejected K.S.'s application. Taylor suggested that, after K.S. was rejected, she underwent another psychiatric evaluation with an outside psychiatrist and thereafter gained employment with the Spokane Police Department.

In a supplemental declaration, Mel Taylor testified that he learned of the information about K.S.'s initial rejection for employment during the ordinary course of business as an investigator for the Spokane Police Department. He added that the report leading to the denial of employment would remain in her employment file with the police department.

Dr. Robert Cosby opined, in a declaration Gordon Ennis relies on as support for his personal restraint petition:

> In your inquiry of May 11, 2022*, you asked whether the alleged victim's documented history of being rejected from a police academy as a police officer due to a psychological finding of "unresolved sexual*

12

*assaults*," and whether that information might have caused the trier of fact at the time of trial to question her credibility. In my professional opinion, the answer is yes, this finding might have caused the jury to have had questions relating to her credibility, regardless of the nature of the unresolved sexual assaults. . . .

. . . .

Much is unknown regarding the Victim's history and functional capacities based on the information you provided. What is known, however, is that she applied to a police academy and received a fitness for duty evaluation. *She was rejected based on, at least in part, the evaluator's objective finding that her "unresolved sexual assaults" would prevent her from completing essential job requirements*. I understand that this evaluation occurred five or six years before the allegations against the defendant; which resulted in a conviction of Rape in the Second Degree.

Based on the empirical literature and my clinical and forensic experience, *unresolved sexual assaults could affect the Victim's credibility in the following ways*.

Pet'r's Ex. B. at 1 (emphasis added).

Attorney Steven Thayer signed a declaration that opined that Robert Cossey performed ineffectively when representing Gordon Ennis during the trial proceeding.

Thayer avowed:

With the forgoing in mind, competent investigation and motion practice on this case would have revealed that the alleged victim was rejected from the police academy due to a psychological finding of "unresolved sexual assaults." Counsel's failure to expose and make use of this crucial information was inexcusable, as a fundamental measure of competent representation is vigorous discovery and pretrial motion practice focused on developing evidence to deconstruct the State's narrative and to corroborate the defense. That did not happen in this case. The credibility of the alleged victim was crucial to the State's case, yet defense counsel never learned that she had been rejected from the police academy because of psychological concerns relating to unresolved sexual assaults. The importance of his failure in this regard is obvious. See Declaration of Robert L. Cosby, Psy.D. Attached as Appendix A.

13

Pet'r's Ex. C at 4.

Gordon Ennis' declaration reads in part:

> 2. . . . During trial preparation, and through all of the court proceedings, *I never learned* or was there information provided to me or my attorney that *K.S. had been rejected from the Spokane Police Academy as a result of unresolved issues pertaining to sexual assaults*. My investigator, *Dave Wyrick, learned of that information from Mr. Mel Taylor* after the trial was over.
>
> 3. There was never any information or any report that was provided in discovery, although *the prosecuting attorney*, from what I now understand, *knew about this rejection of K.S. as a result of sexual assault issues*.
>
> . . . .
>
> 10. *As far as the new prior sexual assault allegations*, I believe there are questions of whether they dealt with intoxication, whether K.S. claimed to be the aggressor, or whether the allegations were unfounded or unpursued, or if they showed a pattern of false allegations.

Pet'r's Ex. D at 1-2, 4 (emphasis added).

PROCEDURE

On July 6, 2022, Gordon Ennis filed this personal restraint petition, a brief in support of the petition, and the declarations. On December 22, 2022, the State filed a motion to strike some of the declaration testimony as containing hearsay and otherwise inadmissible evidence. *See* State's Motion to Strike. On April 25, 2023, our court commissioner denied the State's motion to strike. The State then filed a motion to modify the commissioner's ruling on the motion to strike, which this court granted. A

panel ruled that the motion to strike would be decided at the time the court rules on the merits of the personal restraint petition.

## LAW AND ANALYSIS

In his personal restraint petition, Gordon Ennis argues that (1) the State violated its *Brady* obligation and his right to due process by withholding newly discovered evidence, (2) defense counsel provided ineffective assistance of counsel, and (3) jury instructions 10 and 11, the noncorroboration jury instructions, constituted an improper comment on the evidence by the trial court, resulting in a violation Ennis's right to present a defense. We decline to review Ennis' first assignment of error because, in the next section of this opinion, we strike the evidence, on which he relies for support. We also decline to review all of Ennis' ineffective assistance of counsel arguments, with the exception of the argument pertaining to the State's motions in limine, for the same reason. We reject this latter argument and the third assignment of error on their merits.

### Motion to Strike

The State asks us to strike portions of all four declarations filed in support of the personal restraint petition. We address each declaration separately. We grant the State's request in full.

### *Mel Taylor*

The State challenges the following paragraphs in detective Mel Taylor's declaration as inadmissible:

15

6. I know as a fact, as part of my job and position at the Police Academy in Spokane that K[.]S[.] had an unresolved sexual assault claims in the past and was rejected during the application process.

7. The Spokane Police Department psychiatrist, in the psychiatric examination of K[.]S[.], rejected her for employment because she had "unresolved sexual assault cases in her history," and therefore was not accepted by the Spokane Police Department for employment as a police officer.

Pet'r's Ex. A at 2. The State argues that the paragraphs contain hearsay statements. The State also argues that nowhere in the declaration, contrary to ER 602, does Taylor establish the basis of his personal knowledge of the Spokane Police Department psychologist's examination of K.S., in which the psychiatrist found that she had "unresolved sexual assault cases in her history."

In response, Gordon Ennis argues that Mel Taylor's declaration does not include hearsay because it is evidence of the existence of K.S.'s psychological problems offered by a competent source. Ennis further argues that, because the existence of such sexual assault problems relates to K.S.'s state of mind, motive, or bias, he should be able to rely on it in his personal restraint petition.

RAP 16.7 governs the content of a personal restraint petition. A subsection of the rule, RAP 16.7(a)(2) provides:

*Grounds for Relief.* A statement of (i) *the facts* upon which the claim of unlawful restraint of petitioner is based and *the evidence* available to support the factual allegations, and (ii) why the petitioners restraint is unlawful for one or more of the reasons specified in rule 16.4(c). Legal argument and authorities may be included in the petition, or submitted in a

separate brief as provided in rule 16.10(a).

(Some emphasis added.)  The petitioner must present competent evidence in support of the petition.  *In re Personal Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992).  If a defendant submits hearsay or otherwise inadmissible evidence in support of his restraint petition, the court may exclude the evidence in response to a timely motion to strike.  *See In re Personal Restraint of Pirtle*, 136 Wn.2d 467, 479, 965 P.2d 593 (1998).  The Washington Supreme Court and this court have consistently struck hearsay evidence filed in support of a petition.  *In re Personal Restraint of Pirtle*, 136 Wn.2d 467, 479 (1998); *In re Personal Restraint of Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994); *In re Personal Restraint of Moncada*, 197 Wn. App. 601, 608, 391 P.3d 493 (2017).

ER 801(c) defines hearsay as:

> a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

A "declarant" is the person who made the out-of-court statement.  ER 801(b).  A "statement," for purposes of the hearsay, rule is "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."  ER 801(a).  Hearsay is inadmissible as evidence unless it falls under one of the hearsay exceptions.  ER 802.

Paragraph 7 of Mel Taylor's first declaration constitutes hearsay because the paragraph includes the statement of an unnamed psychiatrist, who did not testify at trial.

Gordon Ennis wishes this court to accept the truth of the matter asserted—that K.S. had a history of unresolved sexual assaults and such a history led to her being rejected from the Spokane Police Department.

Language in paragraph 6 of Mel Taylor's first declaration echoes his assertion in paragraph 7. In paragraph 6, Taylor claims that he knows "as a fact" that K.S. had unresolved sexual assault claims and the Spokane Police Department rejected her employment application. The statement lacks foundation because Taylor, in the paragraph, does not disclose his source of information. We presume he did not see the purported sexual assaults. He does not suggest that he participated in the decision to reject the job application. When juxtaposing paragraph 7 with paragraph 6, we surmise that he grounds his testimony on records he did not prepare. Thus, paragraph 6 also contains inadmissible hearsay.

In his supplement declaration, Mel Taylor avers that he gained personal knowledge of the information inserted in his first declaration from reviewing records for applicants to the police department. One's testifying to the content of records serves as rank hearsay. The best evidence rule would also likely preclude someone from testifying to the content of a record, rather than showing the record to the trier of fact. ER 1001, 1002.

Without citing to a specific hearsay exception, Gordon Ennis argues that the two paragraphs in Mel Taylor's declaration are admissible to prove K.S.'s motive to fabricate

the sexual assault allegation she made against him, to prove her state of mind when making the allegation, to show her lack of capacity to accurately report the incident, and to prove the bias she held when testifying. The first argument goes to relevance rather than to defeat a hearsay objection. K.S.'s state of mind likely held relevance, but Taylor lacked any direct knowledge of K.S.'s statement of mind. Taylor was not present when K.S. commented about her state of mind. Thus, the evidence in the two paragraphs remains hearsay.

ER 803(a)(3), titled "*Then Existing Mental, Emotional, or Physical Condition*," provides that the following is not excluded by the hearsay rule:

> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Importantly, this exception concerns the declarant's state of mind. In our scenario, the doctor is the declarant because he uttered the statement. The doctor's state of mind, motive, or bias lack relevance to establishing K.S.'s state of mind, motive, or bias.

We also note that Mel Taylor references "unresolved sexual assault claims." Taylor does not give any details of the purported claims. Taylor does not share whether K.S. was the alleged perpetrator or the victim of the alleged claims. Taylor does not explain why he characterizes the claims as unresolved. Taylor does not elucidate why

unresolved sexual assault claims would impact the Spokane Police Department's decision to reject K.S.'s job application, assuming it did so for this reason.

Gordon Ennis fails to explain how Mel Taylor's declaration evidences K.S.'s motive to falsely accuse him of sexual assault, how the declaration testimony establishes K.S.'s capacity to report the sexual assault, or why Taylor's paragraphs impeach the credibility of K.S. In short, Ennis does not establish any minimal relevance to the comments in paragraphs 6 and 7.

*Robert Cosby*

The State argues that the declaration of Dr. Robert Cosby relies on hearsay inserted into the declaration of Mel Taylor. Cosby opines that K.S.'s "'unresolved sexual assaults'" could have affected K.S.'s credibility. Pet'r's Ex. B at 1. In so opining, Cosby references the "documented history of being rejected from a police academy." Pet'r's Ex. B at 1. Cosby does not declare that he saw the documents that contained the history. He does not disclose the source of the documented history.

According to the State, Robert Cosby's opinion, without additional information, is speculative and inadmissible as it lacks foundation. In response, Ennis argues that the records observed and referenced by Cosby in his report are not hearsay as Cosby is not directly quoting out-of-court statements of others.

We need not resolve whether Robert Cosby's declaration contains inadmissible hearsay. The opinion of Cosby is inadmissible for three other reasons. First, Cosby does

not state that he relies on evidence that the psychology profession deems reliable.

Second, Cosby does not declare that the evidence of "unresolved sexual assaults" would

likely impact the credibility of K.S. Third, no witness may deliver opinions on the

credibility of a witness.

ER 703 controls. The evidence rule provides:

> BASES OF OPINION TESTIMONY BY EXPERTS
> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

In his declaration, Robert Cosby fails to claim that psychologists reasonably rely on the

documents to which he refers or on another evaluator's objective findings.

Dr. Robert Cosby testified that the unresolved sexual assaults "could" have and

"might have" impacted K.S.'s credibility. Pet'r's Ex. B. at 1. He did not testify that the

information "would have" or "likely would have" impacted K.S.'s credibility. To be

admissible, expert witness testimony must be relevant and helpful to the trier of fact.

*Anderson v. Akzo Nobel Coatings, Inc.*, 172 Wn.2d 593, 606, 260 P.3d 857 (2011).

Conclusory or speculative expert opinions lacking an adequate foundation will not be

admitted. *Stedman v. Cooper*, 172 Wn. App. 9, 16, 292 P.3d 764 (2012). The expert

witness must express his or her opinion in terms of probability; otherwise the testimony

will be excluded as speculative. *Scioto Land Co. v. Knauff*, 2023-Ohio -482, 232 N.E.3d

894, 907; *Cockayne v. Bristol Hospital, Inc.*, 210 Conn. App. 450, 725, 270 A.3d 713, 470 (2022). To be reasonably probable, a conclusion must be more likely than not. *Peatie* v. *Wal-Mart Stores, Inc.*, 112 Conn. App. 8, 961 A.2d 1016, 1025 (2009). "Probability" is sufficient. *Driggs v. Howlett*, 193 Wn. App. 875, 905, 371 P.3d 61 (2016).

No reliable test for truthfulness exists, such that a witness is not qualified to judge the truthfulness of a witness. *United States v. Azure*, 801 F.2d 336, 341 (8th Cir. 1986); *State v. Dunn*, 125 Wn. App. 582, 594, 105 P.3d 1022 (2005); *State v. Neidigh*, 78 Wn. App. 71, 76-77, 895 P.2d 423 (1995). An expert may not go so far as to usurp the exclusive function of the jury to weigh the evidence and determine credibility. *State v. Fitzgerald*, 39 Wn. App. 652, 694 P.2d 1117 (1985). If the State presented testimony from a psychologist opining as to the credibility of Gordon Ennis or one of Ennis' witnesses, constitutional error would result. *State v. Dunn*, 125 Wn. App. 582, 593 (2005).

*Steven Thayer*

Gordon Ennis procured an opinion from criminal defense lawyer, Steven Thayer, who opined Ennis' trial counsel, Robert Cossey, performed ineffectively. The State argues that this court should strike the portion of Thayer's opinion wherein he relied on Mel Taylor's hearsay claim that an SPD doctor found that K.S. had "unresolved sexual assaults." Pet'r's Ex. C at 4. The State also asks that this court strike the portion of

22

Thayer's declaration that relies on psychologist Robert Cosby's opinion on how the unresolved sexual assaults may have affected K.S.'s credibility when testifying at trial.

We strike the portions of the declaration of Steven Thayer for the same reasons that we strike the declaration of Robert Cosby. Thayer's declaration does not state that he relies on information on which an attorney generally relies. Thayer repeats the same speculative and inadmissible opinions of Cosby. Thayer's declaration actually cites to Cosby's declaration.

*Gordon Ennis*

The State seeks to strike two passages from Gordon Ennis' own declaration as relying on hearsay and including hearsay. The first passage references information about K.S.'s unresolved sexual assaults, pretrial discovery, and knowledge of the prosecutor. Ennis impliedly concedes that he gained this information from his investigators and his attorney. Thus, the passage relies on inadmissible hearsay. We strike the passages.

The State also moves to strike to paragraphs 8, 9, and 12 of Gordon Ennis' declaration, wherein Ennis related comments made by his trial counsel. According to Ennis, Robert Cossey told him that Cossey could not find an expert witness to explain the impact of hot water immersion on intoxication, the noncorroboration jury instruction proposed by the State was an unassailable WPIC instruction, and that the prosecutor could mention Ennis' silence during summation.

The three paragraphs from Gordon Ennis' declaration qualify as hearsay. Ennis does not argue for the admissibility of the paragraphs other than to emphasize his counsel's comments as being relevant and critical to his petition. Ennis cites no hearsay exception that would allow the admission of the comments. Robert Cossey's comments could be deemed statements against interest permitted under ER 804(b)(3) since they subjected Cossey to civil liability for malpractice. Nevertheless, statements against interest survive the hearsay rule only if the declarant is unavailable as a witness. ER 803(b). Ennis does not assert that Cossey is unavailable. A statement does not even fall under the hearsay definition if the statement constitutes an admission by a party opponent. ER 801(d)(2). Cossey is not a party to the prosecution.

## Former Claims

We move to the grounds asserted by Gordon Ennis in his personal restraint petition. A personal restraint petition does not substitute for direct appeal. Collateral relief is limited because it undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders. *In re Personal Restraint of Brockie*, 178 Wn.2d 532, 539, 309 P.3d 498 (2013); *In re Personal Restraint of Hagler*, 97 Wn.2d 818, 824, 650 P.2d 1103 (1982).

Importantly, a petitioner bringing a restraint petition may not renew an issue previously raised and rejected on direct review unless the interests of justice demand otherwise. *In re Personal Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004). A

petitioner may raise new issues on collateral attack, including errors of constitutional or nonconstitutional magnitude. *In re Peronal Restraint of Lord*, 123 Wn.2d 296, 303 (1994). A "new" issue is not created merely by supporting a previous ground for relief with different factual allegations or with different legal arguments. *In re Personal Restraint of Davis*, 152 Wn.2d 647, 671 (2004). For example, a defendant may not recast the same issue as an ineffective assistance claim. "Simply recasting an argument in that manner does not create a new ground for relief or constitute good cause for reconsidering the previous rejected claim." *In re Personal Restraint of Benn*, 134 Wn.2d 868, 906, 952 P.2d 116 (1998). Notably, a petitioner cannot revise a previously rejected legal argument to create a new claim. *In re Personal Restraint of Tricomo*, 13 Wn. App. 2d 223, 240, 463 P.3d 760 (2020).

The State argues that Gordon Ennis, in his personal restraint petition, renews grounds for relief raised and addressed on the merits on his direct appeal. The State maintains that Ennis recasts such claims as ineffective assistance of counsel claims. We agree. As we address the discrete contentions asserted by Ennis, we will delineate those already litigated.

### *Brady Violation*

Gordon Ennis asserts that, after trial, judgment, and his appeal, he and his counsel discovered new evidence. He argues the State withheld such evidence in violation of its *Brady* obligation and in violation of his right to due process. According to Ennis, the

discovery of the new evidence entitles him to a new trial on his second degree rape charge. Ennis raises this issue for the first time in his personal restraint petition.

A violation of the rule promulgated in *Brady* and its progeny is a violation of constitutional due process. *State v. Mullen*, 171 Wn.2d 881, 893, 259 P.3d 158 (2011). Thus, because this court reviews alleged due process violations de novo, it reviews claims under *Brady* de novo, as well. *State v. Mullen*, 171 Wn.2d 881, 893-94 (2011).

In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused on request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Supreme Court has expanded the scope of the *Brady* rule in the years following the decision. Favorable evidence under *Brady* now includes not only exculpatory evidence but also impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154-55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). *Brady* obligations extend not only to evidence requested by the defense but also to favorable evidence not specifically requested by the defense. *United States v. Agurs*, 427 U.S. 97, 110, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976). The government must disclose not only the evidence possessed by prosecutors but also evidence possessed by law enforcement. *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995); *State v. Mullen*, 171 Wn.2d 881, 894 (2011).

To prevail on a *Brady* claim, a petitioner must show (1) that the evidence is material to his guilt or punishment either because it is exculpatory, or because it is impeaching, (2) that the State suppressed the evidence willfully or inadvertently, and (3) that prejudice occurred as a result of the suppression. *Strickler v. Greene*, 527 U.S. 263, 263, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999). Evidence is "material" under *Brady* if, with reasonable probability, the result of the proceeding would have been different with disclosure of the evidence. *Kyles v. Whitley*, 514 U.S. 419, 419 (1995); *United States v. Bagley*, 473 U.S. 667, 680, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). The petitioner shows a reasonable probability "of a different result when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles v. Whitley*, 514 U.S. 419(1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

A petitioner filing a personal restraint petition must support his factual allegations with more than speculation, conjecture, or inadmissible hearsay. *In re Personal Restraint of Rice*, 118 Wn.2d 876, 886 (1992). Bare allegations unsupported by citation of authority, references to the record, or persuasive reasoning cannot sustain the petitioner's burden of proof. *State v. Brune*, 45 Wn. App. 354, 363, 725 P.2d 454 (1986).

Gordon Ennis claims information about the medical examination of K.S. conducted by an SPD psychiatrist, the finding of unresolved sexual assault cases, and the denial of employment with the Spokane Police Department constituted new evidence. Nevertheless, we have stricken all of the evidence concerning the purported psychiatric

examination and rejection of employment. Therefore, we do not address the merits of this assertion.

Gordon Ennis emphasizes that the record shows that Robert Cossey failed to object to the State's motion in limine to exclude questioning about K.S.'s other sexual relationships. Ennis fails to establish that such questioning would have been permissible in light of the rape shield statute, RCW 9A.44.020.

*Ineffective Assistance of Counsel*

We now examine Gordon Ennis' list of alleged errors by his trial counsel in support of Ennis' claim of ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees the right to legal counsel in criminal trials. The Washington Constitution also grants an accused, in a criminal prosecution, the right to appear by counsel. CONST. art. I, § 22. Washington law follows the teachings and rules announced in the United States Supreme Court's seminal decision of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under *Strickland*, courts apply a two-pronged test: whether (1) counsel's performance failed to meet a standard of reasonableness, and (2) actual prejudice resulted from counsel's failures. *Strickland v. Washington*, 466 U.S. 668, 690-92 (1984). To prevail on his claim, a defendant must satisfy both prongs of the ineffective assistance of counsel test. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). If one prong

28

of the test fails, we need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78 (1996).

To prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's performance fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Such a standard echoes the standard of care applied in a civil legal malpractice suit. *Hizey v. Carpenter*, 119 Wn.2d 251, 261, 830 P.2d 646 (1992). A claim that trial counsel was ineffective does not survive if trial counsel's conduct can be characterized as legitimate trial strategy or tactics. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

We give great deference to trial counsel's performance and begin our analysis with a strong presumption that counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). To rebut this presumption, a defendant must demonstrate trial counsel's conduct could not be characterized as a legitimate trial strategy or tactic. *State v. Grier*, 171 Wn.2d 17, 33 (2011). The relevant question is not whether counsel's choices were strategic, but whether they were reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000).

To satisfy the prejudice prong, the defendant must establish, with a reasonable probability, that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland v. Washington*, 466 U.S. 668, 694 (1984); *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

Gordon Ennis argues that trial defense counsel performed deficiently with respect to investigating the State's motions in limine because Robert Cossey (1) agreed with the prosecuting attorney not to present evidence pertaining to Ennis' defense regarding the mental health, sexual assaults, and probationary status of K.S., and (2) he agreed not to inquire into the *#MeToo* movement during voir dire. Ennis does not elaborate on the first argument, so we do not address it.

Gordon Ennis argues that Robert Cossey's performance was deficient because he did not know about the *#MeToo* movement. According to Ennis, Cossey should have become aware of the movement in his representation of a defendant who had been charged with sexual assault. Ennis maintains that, without questioning potential jurors about the movement, he could not challenge jurors with a bias stemming from the movement.

The State's motions in limine did not specifically mention the *#MeToo* movement. Motion in limine 11 instead asked: "[t]o exclude any references to 'Project Innocence' or similar projects and prevent the defense from attempting to illicit [sic] personal promises during jury selection." Pet'r's Ex. G at 6. During a hearing on the motions in limine, the following dialogue occurred between the trial court and counsel for both parties:

> MS. FITZGERALD: Number 11, I believe, was agreed to as well.

30

THE COURT: Okay, that's granted. I've never heard Mr. Cossey talk about Project Innocence, so not likely to start now.

MS. FITZGERALD: And I don't know if Mr. Cossey—I've had this now recently, Your honor, with just the current news coverage in this area. I don't know if Mr. Cossey has thought about or wants to address any mention of things like the *MeToo* campaign or the *Stand Up* [sic] campaign or things that are currently going on. I've recently had a trial where that was an issue. The state has no intention of getting into that. It would be improper. So I don't know if the Court wants to include that in there or just leave it to counsel.

MR. COSSEY: Without showing my political naivete, I don't even know what *MeToo* is.

MS. FITZGERALD: Okay.

MR. COSSEY: But maybe I'll say it now but I don't know what it is.

MS. FITZGERALD: The way that it occurred in the other case, your Honor, is that defense counsel felt that they wanted to ask whether or not that kind of climate that's going on right now made the jurors more likely to convict or to feel like they had new duties because of those campaigns.

MR. COSSEY: I wouldn't be able to ask that question with a straight face.

THE COURT: All right. So you're—you're stipulating that, right?

MR. COSSEY: Well, *MeToo*. I don't know what the other one is either.

MS. FITZGERALD: *StandUp* is the other campaign.

THE COURT: And *Time's Up*.

MR. COSSEY: *Time's Up*, oh.

THE COURT: Go—go research those.

MR. COSSEY: I guess I need to.

THE COURT: And don't use them.

MR. COSSEY: That's kind of embarrassing but I don't . . .

THE COURT: That's fine. So that—that's stipulated. It's granted.

RP at 34-36 (some alterations in original).

We agree that Robert Cossey, as an attorney representing a defendant charged with sexual assault, should have known of the *#MeToo* movement. If the State's motion

31

in limine 11 had expressly mentioned the *#MeToo* movement, Cossey would have had a duty to learn about the movement before stipulating to the motion. His failure to do so would have constituted deficient performance. Still, because the relevant motion in limine did not mention the *#MeToo* movement, we conclude that Cossey did not perform deficiently by stating he did not have knowledge on the movement and agreeing not to question prospective jurors about it during the hearing on the motions. We do not address the separate question of whether any deficiency caused Gordon Ennis prejudice.

Gordon Ennis argues that defense counsel performed deficiently by failing to object throughout trial to the prosecution's comments on his right to silence. Ennis contends that the State made improper commentary while questioning a detective on the stand, citing RP at 1472, and while delivering its closing argument, citing RP at 1496, 1497, 1499, 1500, 1510. He also cites RP 1021, 1232-1247, and 1465-67 when making this argument but does not address why he cites those pages.

On direct appeal, Gordon Ennis argued to this court that the State committed prosecutorial misconduct by commenting on his right to silence while questioning the detective, citing RP 1472, and during closing, citing RP 1496, 1497, 1499, 1500, and 1510, and that defense counsel performed ineffectively by failing to object to such misconduct. Resp't's Attach. A 24-25, 33-34; Resp't's Attach. C i-ii, 63-78. This court declined to address the ineffective assistance portion of the argument due to Ennis' failure to adequately brief the issue. This court, however, addressed the merits of the

portion of the argument concerning prosecutorial misconduct.  In doing so, this court held

that:

> [the trial court's] conclusions that the prosecutor's statements were not comments on silence and were not so flagrant and ill intentioned that any resulting prejudice could not have been cured by instruction [were] reasonable.

Resp't's Attach. A at 33.

Gordon Ennis either frames the same prosecutorial misconduct argument as an

ineffective assistance of counsel argument on collateral review or the same ineffective

assistance of counsel argument that he raised on direct review.  Either way, this court

declines to review the argument because it determined on direct review that the

prosecution did not comment on Ennis' right to silence on so defense counsel could not

have erred by failing to object to such commentary.  Also, a petitioner may not recast the

same issue as an ineffective assistance claim; simply recasting an argument in that

manner does not create a new ground for relief or constitute good cause for reconsidering

the previous rejected prosecutorial misconduct claim.  *In re Personal Restraint of Benn*,

134 Wn.2d 868, 906, (1998); *In re Personal Restraint of Davis*, 152 Wn.2d 647, 671

(2004).

Gordon Ennis argues that defense counsel performed deficiently by failing to

object to the State's vouching of K.S.'s truthfulness throughout trial.  He cites to two

passages in the trial record: RP at 1513-14 and RP at 1543-44.  He also cites RP at 1487-

1488 when making this argument but does not explain why he cites those pages specifically, so we do not address the argument as it relates to those pages.

On direct appeal, Gordon Ennis argued that the State committed prosecutorial misconduct by vouching for K.S.'s truthfulness, citing RP 1513-14 and 1543-44, and that defense counsel performed deficiently by failing to object to the alleged misconduct. Resp't's Attach. C 81-86. Although this court declined to address the argument within the prism of ineffective assistance of counsel, it addressed the contention within the rubric of prosecutorial misconduct. In doing so, this court held:

> The complained-of statements are not vouching because they do not indicate the prosecutor's personal opinion as to K.S.'s veracity. They are inferences tied to the evidence.

Resp't's Attach. A at 36.

Gordon Ennis frames the same prosecutorial misconduct argument as an ineffective assistance of counsel argument on collateral review. He also repeats the same ineffective assistance of counsel argument raised on direct review. Either way, we decline to review the argument because (1) the court determined on direct review that the prosecution did not vouch for the truthfulness of K.S. and (2) a petitioner may not recast the same issue as an ineffective assistance claim. *In re Personal Restraint of Benn*, 134 Wn.2d 868, 906, (1998); *In re Personal Restraint of Davis*, 152 Wn.2d 647, 671 (2004).

Gordon Ennis argues that defense counsel performed deficiently by failing to object to jury instructions 10 and 11, the noncorroboration instructions. On direct appeal,

Ennis raised a similar argument. Specifically, he argued that the trial court erred in offering a noncorroboration instruction on the ground that it constituted an improper comment on the evidence and violated his right to present a defense. Resp't's Attach. C i-ii, 45-63; Resp't's Attach A. 16-17. This court addressed and rejected the argument on its merits. This court held that the trial court expressed no opinion by giving the jury instructions in Ennis' trial. This court explained:

> The instruction accurately stated the law as provided by RCW 9A.44.020(1). It expressed no view as to the truth or falsity of K.S.'s testimony or the weight to be given it. The instructions submitted those matters to the jury.

Resp't's Attach. A at 19. With respect Ennis' argument concerning his right to present a defense, this court wrote:

> [Ennis] makes a conclusory argument that the corroboration instruction, in conjunction with instruction on the defense of reasonable belief that he requested, "misled" and "confus[ed]" the jury. Appellant's Opening Br. at 52-53. Even if that were so, he cites no authority that clear and consistent jury instructions are one of the minimum guarantees of due process. And he fails to provide an example of any argument he was entitled to make, but was prevented from making, by virtue of the two instructions. No violation of his right to present a defense is shown.

Resp't's Attach. A at 22.

Gordon Ennis argues that defense counsel performed deficiently by failing to move for a change of venue. Ennis raised this same argument on direct appeal and this court addressed it on its merits. In doing so, this court held that a motion to change venue

would not have likely been granted and that Ennis could not demonstrate prejudice.

Since this court already addressed and rejected the argument on its merits on direct

review, we decline to review it as part of Ennis' petition. *In re Personal Restraint of

Davis*, 152 Wn.2d 647, 671 (2004).

Gordon Ennis argues that defense counsel performed deficiently by dismissing and

failing to advance a legally valid defense to the charge of second degree rape. He does

elaborate on this argument.

On direct review, Gordon Ennis raised this same argument but cited to specific

pages in the record to support it. *See* Resp't's Attach. C 107-113. This court addressed

the argument on its merits and rejected it. *See* Resp't's Attach. A 53-55.

Gordon Ennis argues that defense counsel performed deficiently by possessing a

conflict of interest involving Doug Strosahl. He does not elaborate on this argument.

On direct review, Gordon Ennis raised the same argument about a conflict. *See*

Resp't's Attach. C ii, 98-104. In addressing the argument, this court explained:

> When an ineffective assistance claim is raised on appeal, the
> reviewing court may consider only facts within the record. *Grier*, 171
> Wn.2d at 29 (citing *McFarland*, 127 Wn.2d at 335). Before we could begin
> to consider whether evidence of consensual sexual contact between Doug
> Strosahl and K.S. on the night of the party would have had a reasonable
> probability of changing the outcome of trial, we would first have to see the
> evidence and a demonstration that it was admissible. If demonstrating
> ineffective assistance depends on evidence outside the trial record, a
> defendant must file a personal restraint petition supported by the necessary

> evidence. *Id*. (citing *McFarland*, 127 Wn.2d at 335; *Strickland*, 466 U.S. at 691).
>
> Ennis cannot establish ineffective assistance on the existing record. His remedy is to file a personal restraint petition supported by Doug Strosahl's sworn testimony about the contact and that he would have testified to the contact at trial had he been asked.

Resp't's Attach. A at 50-51. We decline to review the same argument in the personal restraint petition proceeding.

Gordon Ennis argues that Robert Cossey performed deficiently due to his failure to make an opening statement. Ennis does not support this argument with any caselaw or citation to the record, so we decline to address it.

Gordon Ennis argues that defense counsel performed deficiently by failing to object when the State expressed opinions about his guilt. Ennis cites RP 862, 866, 867, 869, 876, 877, 879-80, 933-34 as containing the State's expression of such improper opinions.

On direct appeal, Gordon Ennis raised a similar argument. He then argued that the State committed prosecutorial misconduct by expressing an opinion on his guilt. When making this argument on direct review, he cited RP 862, 866, 867, 869, 876, 877, 879-80, 933-34—the same pages he relies on to support his argument on collateral review. *See* Resp't's Attach. C at 89-91. This court addressed the argument on its merits and rejected it. *See* Resp't's Attach. A 40-42. Because Ennis recasts the prosecutorial misconduct argument as an ineffective assistance of counsel argument on collateral review, we

decline to review it.  *In re Personal Restraint of Benn*, 134 Wn.2d 868, 906, (1998); *In re Personal Restraint of Davis*, 152 Wn.2d 647, 671 (2004).

*NonCorroboration Jury Instructions*

In addition to claiming that his trial counsel performed ineffectively by failing to object to jury instructions 10 and 11, Gordon Ennis directly argues that the noncorroboration jury instructions constituted an improper comment on the evidence by the trial court and thereby violated his right to a fair trial.  He maintains that, due to such commentary, the court improperly shifted the burden of proving the elements of the crime charged to Ennis, violating his right to due process.

On direct review, Gordon Ennis raised this same argument.  Specifically, he argued that the instructions rendered confusing the prosecution's burden to prove every element of the crime, and that they constituted an improper comment on the evidence by the trial court.  This court addressed this argument on its merits and held that the trial court expressed no opinion by giving the jury instructions in Ennis' trial.  The court also held that the instructions did not mislead the jury.

CONCLUSION

We deny Gordon Ennis' personal restraint petition.

38

No. 39015-2-III
*In re Personal Restraint of Ennis*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, A.C.J.