[Nos. 15226–2–I; 15985–2–I.   Division One.   September 15, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. CHARLES
H. BRUNE, *Appellant.*

*In the Matter of the Personal Restraint of*
CHARLES H. BRUNE, *Petitioner.*

*John R. Christiansen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Susan Roe, Deputy,* for respondent.

SCHOLFIELD, C.J.—Charles Henry Brune appeals his conviction for two counts of indecent liberties and one count of statutory rape in the second degree, alleging it was error to charge him with indecent liberties and statutory rape instead of incest and to grant his request that he act as his own trial attorney. We affirm.

Brune was charged by information with one count of indecent liberties upon Leonora Brune, and one count each of statutory rape in the second degree and indecent liberties upon Michelle Brune. The two victims are his natural daughters. The crimes were alleged to have taken place between June 1, 1982 and June 15, 1983, at which time Michelle was 11 and 12 and Leonora was 10 and 11.

The initial trial date was October 4, 1983. Brune failed to appear. He was later apprehended on a bench warrant, and on April 15, 1984, a new trial date was set for June 13, 1984.

On that date, Brune's counsel was in trial. The expiration date under CrR 3.3 was June 25, 1984.

On June 13, 1984, Brune moved to discharge his counsel, Scott Reiman, for a variety of reasons stated on the record,

including Brune's belief that there had been collusion between Mr. Reiman and the prosecutor's office.[1] Brune did indicate a desire to have standby counsel available to him because of his unfamiliarity with legal proceedings. When asked directly by the judge if he was requesting new counsel, Brune responded by saying he did not want counsel from the Public Defender Association and did not have the means to hire private counsel. He did indicate a willingness to consider representation by counsel from a different public defender group.

At 1:30 on June 13, Mr. Jim Robinson of the Associated Counsel for the Accused was present and indicated that his office could provide counsel for Brune, but that they would need 4 weeks to prepare and would need a continuance as well as a waiver of the requirements of CrR 3.3.

The motions judge, apparently concluding that a 4-week continuance was excessive since Brune was in custody, gave him the option of agreeing to a continuance long enough to permit other counsel to be assigned or to proceed to trial without delay, with Mr. Reiman as standby counsel and Brune conducting his defense pro se. Brune advised the court that time was of the essence and that he desired to appear pro se with Mr. Reiman sitting in with him as his advisor. The motions judge advised Brune that it was not in his best interest to represent himself. The judge stated that under the circumstances, he felt he had no choice but to grant Brune's request to appear pro se.

Prior to the commencement of trial, the trial judge engaged in considerable colloquy with Brune, explaining to him the hearsay rule and some of its exceptions; jury selection and the exercise of peremptory challenges and challenges for cause; voir dire examination of jurors; and an explanation of opening and closing statements. Throughout all of the pretrial proceedings, as well as during the trial, attorney Scott Reiman regularly consulted with

---

[1]This was a bare allegation by Brune, which was totally unsupported by evidence or further comment.

and advised Brune.

During a discussion of plea negotiation, the maximum sentences for the crimes charged were discussed.

## WAIVER OF COUNSEL

A defendant's right to counsel in a criminal case is subject to knowing and voluntary waiver. *Bellevue v. Acrey*, 103 Wn.2d 203, 691 P.2d 957 (1984). What amounts to a knowing and voluntary waiver has been variously described. In *Acrey*, the court said:

In the absence of a colloquy, the record must somehow otherwise show that the defendant understood the seriousness of the charges and knew the possible maximum penalty. The record should also show that the defendant was aware of the existence of technical rules and that presenting a defense is not just a matter of telling one's story.

*Acrey*, at 211.

In *Faretta v. California*, 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975), the Supreme Court held that a defendant in a state criminal trial has the constitutional right to stand trial without counsel when he voluntarily and intelligently elects to do so. The Court stated further:

Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta*, at 835 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 87 L. Ed. 268, 63 S. Ct. 236, 143 A.L.R. 435 (1942)).

The Court added:

The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will.

*Faretta*, at 835.

To what extent the defendant must appreciate the risks of self-representation is thus described in only general

terms. The cases are clear, however, that the record must show a voluntary choice. The election cannot be equivocal. That requirement is fully met here. The only issue is Brune's state of knowledge of the risks involved. We find the basic requirements of a voluntary and knowing waiver have been met in this case. The colloquy regarding waiver of counsel, which commenced on June 13, 1984, was preceded by Brune's failure to appear for a trial date and his being arrested and confined in jail. On June 13, he was advised by the motions judge that he should not try to represent himself because it was not in his best interest to do so. He also heard an experienced attorney tell the court a substitute attorney would need 4 weeks to prepare for trial.

From the record, it appears that Brune's next appearance in court was before the trial judge on June 21, when he was arraigned on the amended information on which he was tried and was advised of the maximum penalties on each count. He then argued motions to the trial judge involving discovery of information he might use in impeachment of witnesses, subpoenaing witnesses, a motion to dismiss for violation of the speedy trial rule, and a motion to sever counts for trial. The hearsay rule was discussed, and the trial judge advised he could only give very rudimentary advice on the hearsay rule and, by proceeding pro se, Brune was "stuck with the state of your knowledge regarding the law." He also received instruction on impaneling a jury and opening and closing statements. This input from the trial judge operates indirectly to advise Brune of the complexities of litigation and therefore the risks inherent in self–representation. Additionally, throughout all of these proceedings, Brune had Mr. Reiman present and conferred with him often.

We are aware that the information from the trial judge came to Brune after he had made a decision to appear pro se and the court had authorized it. Nevertheless, that is a decision which the court can change at any time and therefore bears upon the issue of Brune's knowledge of the risks involved. *See Faretta,* at 834 n.46.

From all of these circumstances, it would strain common sense to conclude that Brune's voluntary choice to appear pro se was not done with knowledge that self–representation involves the rather obvious risks attendant upon inexperience with trial procedures, lack of interrogation skills, and lack of knowledge of the law. Of course, these risks are greatly modified here because the court required Mr. Reiman, an experienced criminal defense lawyer, to sit with Brune throughout the pretrial proceedings and the trial itself. We conclude there was no abuse of discretion in allowing Brune to appear pro se under these circumstances.

## EQUAL PROTECTION

Brune assigns error to the failure to charge him with incest rather than statutory rape and indecent liberties. He argues that where the same evidence relied upon to prove statutory rape and indecent liberties would also prove first and second degree incest, and the penalties for statutory rape and indecent liberties are different from those for incest, equal protection is violated if the prosecuting attorney has unfettered discretion to charge either.

██ *State v. Farrington,* 35 Wn. App. 799, 669 P.2d 1275 (1983) addressed this same argument. The court acknowledged the rule that:

> Equal protection is violated when a prosecutor is permitted to seek varying degrees of punishment when proving identical criminal elements.

*Farrington,* at 801. *See also State v. Danforth,* 97 Wn.2d 255, 257, 643 P.2d 882 (1982).

Statutes are concurrent where all of the elements required to prove a violation of a general statute are also required to prove a violation of a specific statute. *State v. Shriner,* 101 Wn.2d 576, 579–80, 681 P.2d 237 (1984).

The incest statute, RCW 9A.64.020, provides as follows:

> (1) A person is guilty of incest in the first degree if he engages in sexual intercourse with a person whom he knows to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.

(2) A person is guilty of incest in the second degree if he engages in sexual contact with a person whom he knows to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother, or sister of either the whole or the half blood.

Statutory rape in the second degree is defined in RCW 9A.44.080 as follows:

(1) A person over sixteen years of age is guilty of statutory rape in the second degree when such person engages in sexual intercourse with another person, not married to the perpetrator, who is eleven years of age or older but less than fourteen years old.

Indecent liberties is defined in former RCW 9A.44.100 as follows:

(1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another:

(a) By forcible compulsion; or

(b) When the other person is less than fourteen years of age; or

(c) When the other person is incapable of consent by reason of being mentally defective, mentally incapacitated, or physically helpless.

(2) For purposes of this section, "sexual contact" means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party.

The test for concurrency is not met here. The elements of statutory rape in the second degree and incest are different. In statutory rape, the victim must be at least 11 years of age but less than 14. This requirement is not present in incest. Furthermore, both first degree and second degree incest require a familial relationship not required for statutory rape or indecent liberties. The elements of the offenses are not the same. Sexual intercourse with an adult sister would violate the incest statute but would not amount to statutory rape.

Indecent liberties requires that the victim be less than 14 years of age, or incapable of giving consent, or that the crime is accomplished through forcible compulsion. None of

these are required elements of second degree incest. Lack of consent is not an element in incest. Facts proving incest in the first or second degree will not always prove a case of statutory rape or indecent liberties.

When the crimes have different elements, there is no violation of equal protection rights. *State v. Wanrow,* 91 Wn.2d 301, 312, 588 P.2d 1320 (1978); *State v. Farrington, supra* at 802.

### Legislative Intent

Brune also argues that when the Legislature amended the incest statute in 1982 by expanding the definition of incest to include sexual activity not amounting to sexual intercourse, the intent was for the incest statute to apply exclusively in all cases where the required familial relationship was present. We find no basis in the statutory scheme for this interpretation. The Legislature is presumed to have been familiar with existing case law in 1982, leaving the charging decision to the prosecutor where there is no violation of equal protection. *Yakima Vly. Bank & Trust Co. v. Yakima Cy.,* 149 Wash. 552, 556–57, 271 P. 820 (1928); *Ellis v. Department of Labor & Indus.,* 88 Wn.2d 844, 848, 567 P.2d 224 (1977). Furthermore, the Legislature did not amend the statutory rape and indecent liberties statutes, limiting their application to nonfamily cases. Under these circumstances, finding no support for Brune's argument, we reject the same.

### Prosecutor's Charging Policy

The charging policy of the King County Prosecuting Attorney, applicable to cases of incest, limits the filing of charges of incest to those cases where the victim was 16 years of age or older and requires charges of rape, statutory rape or indecent liberties in all other cases.

Brune argues such a policy requires a charge carrying the higher penalty in most cases and that this amounts to an abuse of discretion. Brune relies upon *State v. Pettitt,* 93 Wn.2d 288, 609 P.2d 1364 (1980), a habitual criminal case, where the prosecutor's policy required the filing for habit-

ual offender status after three or more felony convictions. The Supreme Court held it was an abuse of the prosecutor's filing discretion to follow such a policy.

*Pettitt* is not dispositive here, however, because the King County Prosecutor's policy challenged here does not require the filing of an action in every case. His discretion to file or not file is not affected. The policy involves only what statute he will use and, as previously stated herein, that does not violate equal protection. In fact, the policy challenged here reinforces equal protection because it is uniformly applied. Discretion can be used in establishing a policy. The charging policy here is reasonable and is based on tenable grounds. We find Brune's assertion that it is arbitrary and capricious to be without foundation, and we reject it.

### PERSONAL RESTRAINT PETITION

Brune filed a personal restraint petition on February 4, 1985, which was consolidated for hearing and disposition with his pending appeal in this case.

In his personal restraint petition, Brune raises the following issues in addition to those disposed of above. He claims ineffective assistance of counsel, objects to a continuance granted to the prosecution, complains of the trial court's refusal to issue subpoenas for defense witnesses, claims that his phone was tapped without his knowledge by King County officials, argues that the trial court erred in denying his motion to sever the three counts for trial, contends that his motion to question the credibility of a juvenile witness was improperly denied, argues that his motion to restrict a third person as a witness and to bar hearsay evidence was denied, claims he did not receive a copy of a statement made by one of the witnesses for the prosecution, alleges he was not assisted by the King County Public Defender's Office in filing an appeal, complains that he was not permitted to use the jail law library, argues error in the trial court's failure to release him on bail pending appeal, argues that his petition seeking compensation for violation

of his rights was improperly denied, makes a claim that the jury was biased, and argues that the court permitted improper testimony from one of the adult witnesses who testified against him.

■ We have reviewed each of these claims and find all of them to be without merit. Most of them are bare allegations, unsupported by any facts, either in the petition or that we can glean from the record. In order to prevail in a collateral attack on a judgment, a petitioner must show that more likely than not he was prejudiced by the error. Bare allegations unsupported by citation of authority, references to the record, or persuasive reasoning cannot sustain this burden of proof. *In re Hagler*, 97 Wn.2d 818, 650 P.2d 1103 (1982).

It would serve no purpose to unduly prolong this opinion by addressing in detail each claim asserted by Brune in his personal restraint petition, and we decline to do so.

The petition is denied and the judgment affirmed.

WILLIAMS and PEKELIS, JJ., concur.

Review by Supreme Court pending August 10, 1987.