IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 84860-7-I |
| | DIVISION ONE |
| KING CARNELL WRIGHT, f/n/a TEDGY CARNELL WRIGHT,[†] | UNPUBLISHED OPINION |
| Petitioner. | |

SMITH, J. — In 2019, a jury convicted King Wright of rape in the first degree, rape in the second degree, robbery in the first degree, and two counts of unlawful possession of a firearm. The conviction rested on two separate incidents. This court affirmed the convictions on appeal. In 2022, Wright initiated this personal restraint petition (PRP) asserting that the court should have severed the charges between the two incidents, that the court improperly charged the firearm enhancements, that the court should have granted his motion to suppress evidence, and that he was subject to ineffective assistance of counsel. Wright raises issues that were addressed in his direct appeal without demonstrating, or even arguing, that the ends of justice would be served by this court addressing them now. In addition, he has failed to demonstrate that the

---

[†] At the time of his conviction, petitioner's name was Tedgy Carnell Wright. Petitioner has since legally changed his first name to King and provided this court with a copy of the order changing name. Accordingly, we have changed the caption to reflect the name change.

trial court committed error or that his counsel was ineffective, therefore we deny Wright's petition.

## FACTS

King Wright brings this PRP challenging the denial of his motion to sever charges related to two separate incidents, one involving J.B. and one involving N.F. The complete facts concerning Wright's initial conviction, trial, and direct appeal can be found in this court's published-in-part opinion, *State v. Wright*, 18 Wn. App. 2d 725, 492 P.3d 224 (2021).

### J.B. Incident

In May 2018, J.B., working as an escort, agreed to meet Wright at her home. When J.B. refused Wright's advances, he threatened her with a gun and forced her to perform oral sex. He then forced her to have vaginal sex.

Following the assault, and still armed, Wright began searching J.B.'s room leaving with a pair of Air Jordan tennis shoes, two gold and diamond "grills,"[1] a photo of J.B., and J.B.'s wallet.

J.B. later underwent a sexual assault examination. The male DNA collected from the examination matched a reference sample from Wright.

### N.F. Incident

In June 2018, N.F. met Wright to provide sexual services. When N.F. expressed physical disinterest in Wright, he asked for his money back. N.F. refused and Wright "threw [her] on the ground," choked her with both hands

---

[1] In her initial contact with law enforcement, J.B. indicated that Wright took what were known as "grills": gold and diamond dental pieces and teeth coverings.

around her neck, and vaginally raped her. He also struck her with his silver handgun.

In an interview with law enforcement officers the next day, N.F. stated that Wright had taken $1,300 in marked bills from her purse. Officers later recovered $1,240 of those marked bills, a locked toolbox containing a black and silver handgun, and Air Jordan tennis shoes that matched J.B.'s description.

N.F. also underwent a sexual assault examination. The swabs from N.F.'s assault kit contained male DNA that matched Wright.

Trial

In December 2018, the State charged Wright with six offenses arising from the two incidents. Wright moved to sever the two counts related to J.B. from the four counts related to N.F. He also moved to sever the unlawful firearm possession counts from the other charges involving each victim. The trial court denied Wright's motion to sever the counts as to each victim but bifurcated the trial on the two unlawful possession of a firearm charges

Wright also moved to suppress evidence under CrR 3.6, asserting that the evidence of the marked bills found in his possession was the result of an illegal search or seizure. The court denied Wright's motion, holding that the warrants were valid and the evidence was therefore admissible.

During deliberations, the jury inquired of the court "[i]f we are unable to reach a verdict on a count, what happens?" The trial court conferred with both defense counsel and the State and they agreed to instruct the jury to "see your

instructions, particularly instructions #10 and #28." Wright was not present during this conference.

That afternoon, the jury returned guilty verdicts on the rape, robbery, and assault counts as charged. By special verdict, the jury found Wright guilty of the firearm enhancements related to the assault and two rape charges.

Wright moved to arrest the judgment and for a new trial on multiple grounds. He argued, among other things, that a new trial was appropriate because the trial court erred in failing to "have [Wright] present upon its consideration and response to a jury question that arose during jury deliberations." The trial court denied the motion and sentenced Wright to an indeterminate sentence of 438 months. Wright appealed.

<u>Direct Appeal</u>

On direct appeal, Wright argued that the trial court violated his state and federal constitutional rights to presence when it considered and responded to the jury's inquiry about deadlock, violated the confrontation clause in excluding certain impeachment evidence, and abused its discretion in admitting two photo spreads that included Wright's booking photo. He also contended that the prosecutor committed reversible misconduct during closing argument, that his counsel was ineffective for failing to renew the motion to sever, and that cumulative error deprived him of a fair trial. This court rejected each claim and affirmed in a partially published opinion. The Washington Supreme Court denied Wright's petition for review in January 2022.

Wright timely filed this PRP.

4

## ANALYSIS

### Standard of Review

Collateral relief from a conviction through a PRP is an extraordinary remedy and petitioners must meet a high standard to obtain relief. *In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 12, 513 P.3d 769 (2022). "To gain relief through a PRP, a petitioner must make a heightened showing of 'actual and substantial prejudice' for a constitutional error or 'a complete miscarriage of justice' for a nonconstitutional error." *Kennedy*, 200 Wn.2d at 12 (internal quotation marks omitted) (quoting *In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 333, 422 P.3d 444 (2018)). The petitioner must make this showing by a preponderance of the evidence. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013). Bare assertions unsupported by references to the record, citation to authority, or persuasive reasoning cannot sustain the petitioner's burden of proof. *In re Pers. Restraint of Brune*, 45 Wn. App. 354, 363, 725 P.2d 454 (1986).

### Motion to Sever

Wright asserts that the trial court erred in denying his motion to sever because joinder of the separate alleged sex offenses would jeopardize his right to a fair trial. The State argues that Wright may not relitigate issues that were raised and rejected on direct appeal, including the denial of severance, without a showing that the interests of justice require relitigation. We agree with the State.

" 'A claim rejected on its merits on direct appeal will not be reconsidered in a subsequent personal restraint petition unless the petitioner shows that the ends

of justice would be served thereby.' " *Yates,* 177 Wn.2d at 33-34 (quoting *In re Pers. Restraint of Jeffries*, 114 Wn.2d 485, 487, 789 P.2d 731 (1990)).

Here, Wright does not argue that relitigation of severance would serve the ends of justice. In fact, Wright does not acknowledge that he raised the issue on direct appeal and that this court affirmed the denial of his motion to sever. Given that the issue of severance was the subject of his direct appeal and he has failed to provide argument as to why relitigation would serve the ends of justice, we decline to address the issue.

### Prosecutorial Misconduct

Wright next maintains that the trial court erred when allowing the prosecutor to vouch for an alleged victim during closing arguments.

As with Wright's motion to sever, this court rejected Wright's prosecutorial misconduct claim on direct appeal. Wright does not address this rejection or make any argument as to why the ends of justice require relitigation of the issue. Because Wright again raises an issue addressed in his direct appeal and fails to argue that relitigation of misconduct would serve the ends of justice, we decline to address the issue.

### Firearm Enhancement

Wright claims that the trial court erred in imposing a firearm enhancement not included in his charging documents. He further states that the charging documents are fatally defective and requests dismissal without prejudice. The State maintains that the amended charging documents include the firearm enhancement allegations and that Wright's claim is frivolous. Because the

charging documents do include the firearm enhancement statutory authority and facts supporting the charge, we dismiss Wright's claim.

The essential elements rule requires the State to identify the crime charged and allege facts supporting every element of that offense in the charging documents so as to fully inform the defendant of the charges against them. *State v. Johnson*, 185 Wn. App. 655, 673, 342 P.3d 338 (2015). To impose a firearm enhancement, the State must allege, and prove beyond a reasonable doubt, that the defendant was " 'armed with a firearm' " during the commission of the charged crime. *Johnson*, 185 Wn. App. at 674 (quoting *State v. Recuenco*, 163 Wn.2d 428, 439-40, 10 P.3d 1276 (2008)).

Wright contends that the trial court, rather than the State, charged him with a firearm enhancement after the close of trial and that his charging documents failed to include the enhancement. Wright is incorrect. The original information alleged that Wright was armed with a firearm when he robbed N.F. In the second amended information, the State added the statutory authority for a firearm enhancement for the robbery count, as well as for the assault of N.F. in the second degree and rape of J.B. in the first degree. The third amended information included the same language and statutory authority. The jury then found that Wright was armed with a firearm when he committed the three specified offenses.

The charging document cited the firearm enhancement statute and included facts supporting that charged offense. The jury then determined that

7

Wright actually was armed with a firearm during the commission of the charged offenses.

Motion to Suppress

Wright asserts that the trial court erred in denying his CrR 3.6 motion to suppress evidence found in the search of his apartment because the search warrant was not supported by probable cause. He also contends that, in searching a purse within his apartment, the search exceeded the scope of the warrant. The State disagrees. We conclude that probable cause supported the search warrant and that Wright lacks standing to challenge the search as exceeding the scope of the warrant.

In reviewing a trial court's suppression decision, we consider whether substantial evidence supports the findings of fact and whether those findings support the conclusions of law. *State v. Alexander*, 5 Wn. App. 2d 154, 159, 425 P.3d 920 (2018). Substantial evidence exists where there is enough to persuade a fair-minded person of the truth of the finding. *Alexander*, 5 Wn. App. 2d at 159. We treat unchallenged findings of fact as verities on appeal and review the trial court's conclusions of law de novo. *Alexander*, 5 Wn. App. 2d at 159. We review a magistrate's decision to issue a search warrant for an abuse of discretion. *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002).

Article I, section 7 of the Washington Constitution provides, "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." A search warrant grants the requisite "authority of law" to support a search. *State v. Garner*, 26 Wn. App. 2d 654, 660, 529 P.3d 1053 (2023). A search

warrant may only be issued upon a determination of probable cause. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). " 'Probable cause exists if the affidavit in support of the warrant sets forth facts and circumstances sufficient to establish a reasonable inference that the defendant is probably involved in criminal activity and that evidence of the crime can be found at the place to be searched.' " *State v. VanNess*, 186 Wn. App. 148, 165, 344 P.3d 713 (2015) (quoting *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999)). Probable cause may be based on the report of a citizen provided that the citizen's basis of knowledge and reliability is established. *Vickers*, 148 Wn.2d at 111-12.

In general, a person may only challenge a search or seizure if they have a personal Fourth Amendment or article I, section 7 interest in the area searched or property seized. *State v. Libero*, 168 Wn. App. 612, 616, 277 P.3d 708 (2012). But a defendant who has no legitimate expectation of privacy may be able to assert automatic standing under article I, section 7. *Libero*, 168 Wn. App. at 616-17. To claim automatic standing, the defendant must show that possession is an essential element of the charged offense and that the defendant was in possession of the seized property at the time of the contested search. *State v. Jones*, 146 Wn.2d 328, 332, 45 P.3d 1062 (2002).

Here, Wright claims both that the search warrant was not supported by probable cause and that the actual search exceeded the scope of the search warrant. We disagree.

First, probable cause supports the search warrant. The affidavit supporting the warrant request establishes that N.F. had personal knowledge of

9

the facts she relayed to law enforcement, N.F. accurately described Wright's car, accurately identified and led law enforcement to Wright's apartment, and definitively identified Wright out of a photographic montage. The evidence N.F. provided, corroborated by law enforcement, establishes her knowledge as sufficiently reliable to establish probable cause. N.F.'s descriptions of the crimes committed against her then establish a reasonable inference that Wright was involved in criminal activity. Given that the alleged criminal activity took place at Wright's apartment, N.F.'s statement similarly raised a reasonable inference that evidence of the crime could be found at the place to be searched. Because probable cause supported the warrant, the court did not abuse its discretion in issuing the search warrant.

Wright moved to suppress the evidence based on the claim that probable cause was not established because the evidence weighed against finding that N.F. was a credible witness. The record, as noted above, does otherwise. In reviewing N.F.s corroborated statements, the trial court relied on substantial evidence to determine that probable cause existed. The finding of probable cause then supported the trial court's determination that the search warrant was valid. We conclude that the trial court appropriately denied Wright's motion to suppress.

Next, Wright contends that law enforcement's search exceeded the scope of the search warrant by including a purse on the property. He asserts he has automatic standing to bring this claim. But Wright lacks standing to bring such a claim.

To reiterate, a person generally has standing to challenge a search or seizure only if they have a personal interest in the area searched or property seized. A person without a personal interest has standing only if possession is an essential element of the charged offense and they were in possession of the property at the time of the contested search.

The purse at issue here belonged to Gloria McGee, the mother of Wright's children. Accordingly, Wright did not have a personal interest in the property sufficient to allow standing. In addition, Wright was charged with rape in the second degree, robbery in the first degree, and assault in the second degree for his crimes against N.F. Possession of N.F.s marked currency is not an essential element of any of the three charged offenses, nor was Wright actively in possession of the purse at the time of the search.[2] Wright lacks standing to challenge the search as outside the scope of the warrant.

<u>Improper Jury Instructions</u>

Wright asserts that the trial court erred in providing jury instructions that relieved the State of its burden to prove each element beyond a reasonable doubt. The State maintains that Wright's claim is frivolous because he fails to identify the instructions to which he objects. We agree with the State.

Again, in initiating a PRP, the petitioner bears the burden of providing the facts upon which the claim rests and evidence to support the factual allegations. RAP 16.7(a)(2). Thus, a petitioner must state with particularity facts that, if

---

[2] RCW 9A.44.050(1)(a); RCW 9A.56.200(1)(a)(ii); RCW 9A.56.190; RCW 9A.36.021(1)(c).

proved, would entitle the petitioner to relief. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992).

Here, Wright does not identify the instructions to which he objects. Rather, Wright notes two cases: *State v. Brown*, 147 Wn.2d 330, 58 P.3d 889 (2002) and *United States v. Kaiser*, 660 F.2d 724 (9th Cir. 1981), which he cites incorrectly.[3]  Neither clarify his argument.

*Brown* involves a faulty accomplice liability instruction, which was not given in this case.  And the case Wright cited while intending to reference *Kaiser* is a drug conspiracy case that centers on evidentiary errors and Privacy Act violations, neither of which are at issue here.

Because Wright fails to provide more than conclusory assertions, we dismiss this claim.

### Ineffective Assistance of Counsel

Wright lastly contends that his appellate counsel was ineffective in failing to raise each of the issues he addresses above, as well as in failing to argue that the right to "appear and defend" under article I, section 22 of the Washington State Constitution is broader than the corresponding right to presence under the Sixth and Fourteenth Amendments to the United States Constitution.  The State asserts that Wright fails to demonstrate deficient performance or resulting prejudice.  We agree with the State.

---

[3] Wright provides the wrong case citation for *Kaiser.* Because he does not provide any detail about the facts of the case, it is difficult to find his intended citation.

A petitioner claiming ineffective assistance of counsel in a PRP necessarily establishes actual and substantial prejudice if the petitioner meets the standard of prejudice applicable on direct appeal. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 538, 397 P.3d 90 (2017). Ineffective assistance of counsel claims are "mixed questions of law and fact" that we review de novo. *In re Pers. Restraint of Fleming*, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).

To demonstrate ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the defendant was prejudiced by that deficient performance. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012). To establish deficient performance, the defendant must show that counsel's performance fell below an objective standard of reasonableness. *State v. Goldberg*, 123 Wn. App. 848, 852, 99 P.3d 924 (2004).

" 'To establish prejudice, a defendant must show that but for counsel's performance, the result would have been different.' " *Goldberg*, 123 Wn. App. at 852 (quoting *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002)). Mere speculation that a different result might have followed is insufficient. *State v. Crawford*, 159 Wn.2d 86, 99-100, 147 P.3d 1288 (2006). " 'An attorney's failure to raise novel legal theories or arguments is not ineffective assistance.' " *State v. Clark*, 17 Wn.App.2d 794, 799, 487 P.3d 549 (2021) (quoting *State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011)).

To demonstrate ineffective assistance of *appellate* counsel, a defendant must demonstrate the merit of any legal issue that appellate counsel failed to raise, in addition to prejudice. *In re Pers. Restraint of Salinas*, 189 Wn.2d 747,

760, 408 P.3d 344 (2018). The failure to raise all possible non-frivolous issues on appeal does not constitute ineffective assistance of counsel. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787, 100 P.3d 279 (2004). Rather, "the exercise of independent judgment in deciding what issues may lead to success is the heart of the appellate attorney's role." *Dalluge*, 152 Wn.2d at 787. Thus, the petitioner must show a reasonable probability that, but for his counsel's unreasonable failure to raise a particular claim, he would have prevailed on his appeal. *Dalluge*, 152 Wn.2d at 788.

1. Wright's Initial Claims

Wright maintains that his appellate counsel was ineffective in failing to raise all of the issues he asserts in his PRP. This includes his arguments surrounding the motion to sever, prosecutorial misconduct, firearm enhancements, CrR 3.6, and improper jury instructions. We conclude that Wright fails to provide sufficient facts, evidence, or authority to support his claims.

To reiterate, the petitioner bears the burden of providing facts upon which his claim rests and evidence sufficient to support those factual allegations. RAP 16.7(a)(2). Conclusory statements and stand-alone allegations are insufficient. *Rice*, 118 Wn.2d at 886; *Yates*, 177 Wn.2d at 18.

For the five above-listed claims, Wright offers only slight variations on "my lawyer not raising this claim was ineffective." He provides no factual allegations specific to the ineffective assistance of counsel claims, no evidence specific to those claims, and no applicable case law. Because Wright fails to provide more

than conclusory allegations, we dismiss these ineffective assistance of counsel claims.

2. Right to Presence Claim

Wright next asserts that appellate counsel failed to adequately argue that the trial court violated his constitutional right to presence because counsel failed to present a state constitutional claim independent of a federal constitutional claim. The State maintains that Wright fails to establish deficient performance or prejudice. Because raising a state constitutional claim independent of a federal constitutional claim is a novel legal argument, we conclude that appellate counsel was not deficient in failing to raise the issue.

Washington appellate courts have "routinely analyzed alleged violations of the right of a defendant to be present by applying federal due process jurisprudence." *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).

In fact, an appellate court considering both the state and federal constitutional right to presence has yet to find a violation of the state constitutional right to presence without a violation of federal due process.

Wright points to *Irby* and the dissent on his direct appeal as evidence that the state constitution provides more protection than the federal constitution. But neither *Irby* nor the dissent establish that the state constitution's right to presence can be violated independent of the federal right. Although a footnote in *Irby* provides that the state right is "arguably" broader than the federal, the case determined that the exchange at issue violated both the state and the federal constitutions. *Irby*, 170 Wn.2d at 885. Similarly, the dissent in *Wright* concluded

15

that the jury inquiry at issue on direct appeal violated both the state and federal right to presence. The dissent would have held that the exchange violated the state constitution for the exact same reason that it violated the federal right to presence: "as discussed, the response to the inquiry could have the effect of either nudging the jury toward a verdict or increasing the chances of a mistrial." *Wright*, 18 Wn. App. 2d at 739-43 (Coburn, J. dissenting). Thus, the dissent does not establish that the state constitution is more protective than the federal due process clause.

Because a court has yet to find a violation of the state right without a violation of the federal right, raising a state claim independent of a federal claim is a novel legal argument. As failure to raise a novel legal argument cannot be ineffective assistance of counsel, Wright fails to establish deficient performance. Without deficient performance, we do not address prejudice.

The petition is denied.

Díaz, J.

WE CONCUR:

_____          Mann, J.