IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | No. 87066-1-I |
| | DIVISION ONE |
| NAVIN AVERY MILKO | UNPUBLISHED OPINION |
| Petitioner. | |

DíAZ, J. — In 2020, a jury convicted Navin Milko of ten crimes involving five victims, including attempted and completed rape, attempted and completed burglary, and completed kidnapping. This court affirmed his convictions on direct appeal and Milko then filed a timely pro se personal restraint petition (PRP). Milko's court-appointed attorney later filed a supplemental brief claiming that one conviction suffers from insufficient evidence, that an offender score error occurred, and that the exceptional sentence required a jury finding. Finding no reversible error or inter alia a sufficient showing of prejudice, we deny his PRP.

## I.  BACKGROUND

We incorporate the facts set forth in this court's prior opinion resolving Milko's direct appeal. State v. Milko, 21 Wn. App. 2d 279, 505 P.3d 1251 (2022) (published in part).

Between August and October 2018, Milko on five separate occasions

contacted women who worked as paid escorts and arranged to meet them at two houses in Puyallup which he did not live in or own and, when each woman arrived, Milko displayed a knife in an attempt to take their money or to rape them. Id. at 282. In 2009 and 2010, Milko had engaged in two similar incidents in Florida involving paid escorts and pleaded guilty to charges related to both incidents. Id. And, as stipulated by Milko at trial, the Florida Department of Corrections had released Milko in August 2018.

In August 2020, a jury convicted Milko on ten of twelve charged crimes, including one count of rape in the first degree, two counts of attempted rape in the first degree, one count of burglary in the first degree, one count of attempted burglary in the first degree, two counts of burglary in the second degree, two counts of attempted kidnapping in the first degree, and one count of felony harassment. The jury also found an aggravating factor of rapid recidivism for each conviction. RCW 9.94A.535(3)(t). As will be elaborated below, the court adopted the State's recommendation and imposed an exceptional indeterminate sentence of 602 months in confinement.

In March 2022, this court affirmed Milko's convictions. Id. Our Supreme Court denied his petition for review on July 13, 2022, and a mandate was issued on July 19, 2022. On July 10, 2023, Milko filed a timely pro se PRP (hereinafter, his "Initial PRP"). On June 21, 2024, Milko's court-appointed attorney filed a supplemental brief making additional claims (hereinafter, his "Supplemental Brief").[1]

---

[1] In July 2024, his counsel filed a reply brief and Milko pro se filed a separate reply brief, the latter of which the clerk of this court rejected. The following month, Milko

## II.   ANALYSIS

### A.   Standard of Review

PRPs are a "'modern version of ancient writs, most prominently habeas corpus, that allow petitioners to challenge the lawfulness of confinement.'" In re Pers. Restraint of Meirhofer, 182 Wn.2d 632, 648, 343 P.3d 731 (2015) (quoting In re Pers. Restraint of Coats, 173 Wn.2d 123, 128, 267 P.3d 324 (2011)). "But relief by way of personal restraint petition is extraordinary" and "'[t]o prevent it from becoming a substitute for an appeal, and to protect the finality of judgments, this court has imposed significant threshold, prima facie burdens on the petitioner before the merits of the substantive claim will be considered.'" Id. (alteration in original) (citation omitted) (quoting In re Pers. Restraint of Grantham, 168 Wn.2d 204, 211, 227 P.3d 285 (2010)). Specifically, a petitioner must show timeliness, error, and prejudice. In re Pers. Restraint of Quinn, 154 Wn. App. 816, 820, 226 P.3d 208 (2010) (timeliness); In re Pers. Restraint of Heidari, 159 Wn. App. 601, 604, 248 P.3d 550 (2011) (error and prejudice).

As to timeliness, a petitioner generally must file their PRP within one year of their judgment becoming final. RCW 10.73.090(1). Here, the one-year time bar is measured from the date of the mandate. Id. Petitions filed outside this one-year time bar must fall under an exception. In re Pers. Restraint of Turay, 150 Wn.2d 71, 85-86, 74 P.3d 1194 (2003).

The State originally averred both Milko's Initial PRP and his Supplemental

---

moved to have his reply brief considered. A commissioner of this court denied his motion. Milko, through his counsel, then moved to modify the commissioner's ruling under RAP 16.10, RAP 10.1, and RAP 1.2. The motion, having been referred to this panel, is hereby denied. The court is sufficiently and fully advised of the issues herein.

Brief "must be dismissed as mixed," because some claims fell outside the exceptions to the one-year time limit, while some did not. However, the State abandoned this argument prior to oral argument. We accept this concession and hold Milko's claims within his Initial PRP and Supplemental Brief meet the timeliness requirements of RCW 10.73.090 and RCW 10.73.100.

After the timeliness threshold is met, the petitioner must establish error and prejudice. Heidari, 159 Wn. App. at 604. The petitioner must make a "threshold showing of constitutional error from which he has suffered actual prejudice or nonconstitutional error that constitutes a fundamental defect that inherently resulted in a complete miscarriage of justice." Id. For constitutional errors, the petitioner "must show by a preponderance of the evidence that a constitutional error has caused them actual prejudice." In re Pers. Restraint of Powell, 117 Wn.2d 175, 184, 814 P.2d 635 (1991). A "general claim of possible prejudice is not sufficient to establish actual prejudice." In re Pers. Restraint of Delgado, 160 Wn. App. 898, 912, 251 P.3d 899 (2011).

A "petitioner who collaterally attacks a criminal judgment and sentence bears the overall burden of demonstrating an entitlement to relief." Quinn, 154 Wn. App. at 820. To carry this burden, a PRP "must be supported by facts or evidence upon which the petitioner's claim of unlawful restraint is based and not solely upon conclusory allegations" or "speculation, conjecture, or inadmissible hearsay." In re Pers. Restraint of Gronquist, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999) (citation omitted). In other words, "'[b]are allegations unsupported by citation of authority, references to the record, or persuasive reasoning cannot

sustain'" a PRP. In re Pers. Restraint of Brennan, 117 Wn. App. 797, 802, 72 P.3d 182 (2003) (quoting State v. Brune, 45 Wn. App. 354, 363, 725 P.2d 454 (1986)).

B.    Claims Related to the Sufficiency of the Evidence

"A conviction based on insufficient evidence contravenes the due process clause of the Fourteenth Amendment and thus results in unlawful restraint." In re Pers. Restraint of Martinez, 171 Wn.2d 354, 364, 256 P.3d 277 (2011); U.S. CONST. amend. XIV. In this way, a challenge on this ground is "constitutional in nature," meaning a petitioner must establish error and actual prejudice. Id. at 363.

"The standard for determining whether a conviction rests on insufficient evidence" and thus error "is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. at 364 (quoting State v. Green, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). "This standard is a deferential one, and questions of credibility, persuasiveness, and conflicting testimony must be left to the jury." Id.

1.    Supplemental Brief: Attempted Burglary in the Second Degree

Milko's Supplemental Brief argues that the evidence was insufficient to support only one aspect of the attempted burglary in the second degree conviction, which required "a finding Milko attempted to enter or remain unlawfully *while armed with a deadly weapon*." Specifically, Milko avers that "K.T. testified [he] had something in his hands," but "did not testify she thought it was a knife" and her testimony that he "had 'something' in his hand is not evidence of being armed with a deadly weapon." We disagree.

Consistent with RCW 9A.52.020(1), the court instructed the jury that burglary in the first degree requires inter alia that Milko have been "armed with a deadly weapon," not necessarily with a "knife." Consistent with RCW 9A.04.110(6), the instructions defined a deadly weapon as "*any* weapon, device, instrument, substance, or article, which *under the circumstances* in which it is *used*, attempted to be *used*, or threatened to be *used*, is readily capable of causing death or substantial bodily harm."[2] (Emphasis added.)

The concept of a deadly weapon in "RCW 9A.04.110(6) requires more than mere possession," as holding "otherwise would eliminate the distinction between deadly weapons per se (firearms and explosives) and deadly weapons in fact (other weapons)." Martinez, 171 Wn.2d at 366. Rather, "unless a dangerous weapon falls within the narrow category for deadly weapons per se, its status rests *on the manner in which it is used, attempted to be used, or threatened to be used*." Id. (emphasis added); see also In re Pers. Restraint of Cruze, 169 Wn.2d 422, 433, 237 P.3d 274 (2010) (noting that where the jury's verdict leaves the "deadly weapon with which the defendant was armed is either *unspecified or specified to be one other than a firearm*, only the lesser deadly-weapon-other-than-a-firearm enhancement is authorized.") (Emphasis added.) In other words, whether an object constitutes a deadly weapon turns on whether the defendant demonstrated "'some manifestation of willingness to use'" an instrument which "under the circumstances" may cause the relevant standard of harm. Martinez, 171 Wn.2d at

---

[2] "'Substantial bodily harm'" is defined as "bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." RCW 9A.04.110(4)(b).

365-66 (citation omitted) (quoting State v. Gotcher, 52 Wn. App. 350, 354, 759 P.2d 1216 (1988)).

Here, K.T. testified to the following events. Milko arranged to meet K.T. at a house in Puyallup, Washington at night. Her friend and boyfriend had driven her to the house, but K.T. left the car alone to meet Milko outside the house. Soon after K.T.'s arrival, Milko grabbed her arm as they rounded the corner of the house and had taken "one step out of view of the car." Milko "clearly had something in his hand," which K.T. described as "something dark" as Milko was hidden "in shadow." Milko "lifted his hand up" with the instrument in a way that was "not a nonthreatening gesture." Milko also "looked murderous" in a manner that K.T. described as "the scariest thing in [her] life to see that look," and she felt she "need[ed] to get out of [t]here right now. This person is going to hurt me.'" Soon after, K.T. managed to escape and ran back to the car for help.

As Milko acknowledges, a "claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." Martinez, 171 Wn.2d at 364 (quoting State v. Walton, 64 Wn. App. 410, 415, 824 P.2d 533 (1992), abrogated on other grounds by In re Pers. Restraint of Cross, 180 Wn.2d 664, 681 n.8, 327 P.3d 660 (2014)). Viewing the evidence in this light, the entire "circumstances" of K.T.'s testimony support the inference that Milko manifested a willingness to attempt or threaten to use the instrument in his hand in a manner readily capable of causing death or substantial bodily harm against K.T. Martinez, 171 Wn.2d at 365-67; RCW 9A.52.020(1); RCW 9A.04.110(6). That is, a "rational" jury could infer, based on the totality of Milko's actions—i.e.,

his plan to meet K.T. alone, to lure her out of sight of any witnesses, to seize her arm, to adopt a terrifying even murderous demeanor, and to raise the instrument in a threatening way—and K.T.'s reactions thereto that Milko was threatening to use an instrument which could cause serious bodily harm. Martinez, 171 Wn.2d at 364.

Our Supreme Court's opinion in Martinez is substantively instructive as well. There, "[n]o one" saw Martinez either with or reaching for a knife and he further "manifested no intent to use" a knife based on the record provided. 171 Wn.2d at 368; see also Gotcher, 52 Wn. App. at 356-57 (holding a defendant was armed with a deadly weapon based on evidence he disregarded police instructions and "'fumbled'" with something in his pocket that was later found to be a switchblade). In Martinez, the only evidence was a knife "found along the path of the chase about 15 feet from the farm shop, suggesting that Mr. Martinez did not have access to the knife during the scuffle with Deputy Wester" and Martinez's empty "unfastened sheath." 171 Wn.2d at 369. Here in contrast, K.T. saw "something" menacing in his hand, and her testimony directly connected Milko's attempt or threat to use that something to her fear for her life.

Viewing the record in a light most favorable to the State as we must, we hold there was sufficient evidence from which a rational jury could have found Milko was armed with a deadly weapon beyond a reasonable doubt. Martinez, 171 Wn.2d at 365, 368-69.

2. Initial PRP: Challenges to Seven of the Ten Convictions

Milko's Initial PRP makes claims of insufficient evidence as to both

convictions for attempted rape in the first degree, both convictions for burglary in the second degree, the attempted burglary in the first degree conviction previously discussed, although on distinct grounds from his Supplemental Brief, the attempted kidnapping in the first degree conviction, and the felony harassment conviction. In exercising our due diligence, we reviewed the merits of each of these claims. With the exception of his argument as to one of the attempted rapes in the first degree convictions, however, he provides only "'[b]are allegations unsupported by citation of authority, references to the record, or persuasive reasoning,'" which is fatal to each claim. Brennan, 117 Wn. App. at 802 (quoting Brune, 45 Wn. App. at 363).

As to the attempted rape in the first degree, Milko argues the State failed to establish he made a "substantial step" towards committing this crime against A.Q. as there "was nothing sexual involved." This court already rejected in direct appeal Milko's assertion that "the State failed to provide sufficient evidence to prove all elements of first degree attempted rape with respect to AQ," which claim similarly relied on "AQ conced[ing] that he never said that he wanted to rape her and that he never grabbed at her clothes or her private parts." Milko, No. 55267-1-II, slip op. (unpublished portion) at 14-16, https://www.courts.wa.gov/opinions/pdf/D2%2055267-1-II%20Published%20Opinion.pdf. Thus, as petitioners are "prohibited from renewing an issue that was raised and rejected[3] on direct appeal unless the

---

[3] "An issue is considered raised and rejected on direct appeal if the same ground presented in the petition was determined adversely to the petitioner on appeal and the prior determination was on the merits." In re Pers. Restraint of Davis, 152 Wn.2d 647, 671 n.14, 101 P.3d 1 (2004).

9

interests of justice[4] require relitigation of that issue," and Milko attempted no such showing, we deny this claim. In re Pers. Restraint of Davis, 152 Wn.2d 647, 671 n.14, 101 P.3d 1 (2004).

C.      Claims Related to Sentencing Errors

        1. Claim Related to Calculating the Proper Standard Range

Milko's Supplemental Brief next claims that the court improperly used the rape in the first degree conviction, instead of one of the *attempted* rapes in the first degree convictions, as the baseline for calculating the standard range for his serious violent offenses, contrary to State v. Weatherwax, 188 Wn.2d 139, 392 P.3d 1054 (2017). Such errors are nonconstitutional. See, e.g., In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 867, 50 P.3d 618 (2002). Thus, Milko must show that any error amounted to a "fundamental defect that inherently resulted in a complete miscarriage of justice." Heidari, 159 Wn. App. at 604.

Generally, sentences for multiple current offenses run concurrently. Weatherwax, 188 Wn.2d at 142 (citing RCW 9.94A.589(1)(a)). However, "sentences for 'serious violence offenses arising from separate and distinct criminal conduct' must run consecutively." Id. (quoting RCW 9.94A.589(1)(b)).

Under Weatherwax, "the sentence for each such serious violent offense . . . is calculated based on 'the offense with the highest seriousness level under RCW 9.94A.515.'" Id. (quoting RCW 9.94A.589(1)(b)). Outside this baseline offense, "the standard sentence range for other serious violent offenses shall be

---

[4] "The interests of justice are served by reexamining an issue if there has been an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application." Davis, 152 Wn.2d at 671 n.15.

determined by using an offender score of zero." RCW 9.94A.589(1)(b). However, "when the seriousness levels of two or more serious violent offenses are identical, the trial court must choose the offense whose standard range is lower as the starting point for calculating the consecutive sentences." Weatherwax, 188 Wn.2d at 156.

The jury convicted Milko inter alia, in count 1, of rape in the first degree and, in count 2, *attempted* rape in the first degree. Both crimes are serious violent offenses under RCW 9.94A.030(46)(a)(vii), (ix). Both crimes have a seriousness level of 12. RCW 9.94A.515. Thus, the trial court should have used as the starting point for calculating the consecutive sentences the offense whose standard range is lower, here, the attempted rape. RCW 9.94A.533(2) (requiring we "multiply[] the range by seventy-five percent" for attempt crimes).

The State concedes the court erred by "us[ing] the completed rape instead of the attempted rape" as "the starting point for calculating sentences." With count 2 as the baseline, Milko's total standard range decreases by 21.25 to 28.75 months. RCW 9.94A.030(46)(a)(vii), (ix); RCW 9.94A.510; RCW 9.94A.515; RCW 9.94A.533(2). Still, Milko's claim is unavailing.

Even when "the sentencing court incorrectly calculates the standard range before imposing an exceptional sentence, remand is the remedy unless the record *clearly* indicates the sentencing court would have imposed the same sentence anyway." State v. Parker, 132 Wn.2d 182, 189, 937 P.2d 575 (1997) (emphasis added).

Milko argues that "*the record does not clearly show* the court would have

imposed the same sentence" had it known the correct standard range. (Emphasis added.)   At most, he claims it "*appears* the court imposed the exceptional sentences in this case with the standard ranges in mind" because the State "noted precisely how much above the standard range" its recommendation for an exceptional sentence was.  (Emphasis added.)

This argument fails for two reasons.  First, Milko misstates and does not meet the standard.  A PRP "must be supported by facts or evidence . . . and not solely upon . . . speculation [or] conjecture."  Gronquist, 138 Wn.2d at 39 (citation omitted).  Thus, a "lack of clarity" or mere "appearances" are not sufficient to carry his burden to show actual prejudice.  In re Pers. Restraint of Elmore, 162 Wn.2d 236, 251, 172 P.3d 335 (2007).

Second, Milko's characterization of the discussion around the State's sentencing recommendation and the court's reasoning is reductive and incomplete.  Viewed in its full context, the State only generally noted in passing how high one of its exceptional sentence recommendations happened to be above the standard range.  See Verbatim Rep. of Proc. (VRP) (Oct. 2, 2020) at 6 ("I'm asking that you impose 300 months . . . so it's about 70 months above the standard range . . . the standard range on that was 69.75 to 92.25").  And for the other count, the State did not even note the standard range, merely stating "100 exceptional."

The State's sentencing memorandum also does not indicate it intended to recommend a sentence of precisely a certain amount over the standard range. Rather, the State emphasized a general concern on Milko's rapid recidivism, repeated violent actions, and lack of remorse.  In other words, the full context of

the State's sentencing request does not indicate its sentencing request was conditioned on it being precisely 70, 75, or any other specific number of months above the standard range as Milko now asserts.

Moreover, the court's comments at sentencing and written findings also indicate it was particularly concerned with the overall deterrent effect of Milko's sentence, after reviewing his offenses, his criminal record, and the public risk as a whole. And, as will be discussed more below, the jury also found a rapid recidivism aggravator for all of Milko's convictions.

Otherwise, Milko fails to explain how a difference in the standard range of 21.25 to 28.75 months—which is relatively small compared to his overall sentence of 602 months—would have altered the court's desire to send a forceful deterrent effect through his sentence.[5]

Therefore, notwithstanding any error, we hold reversal is not warranted as Milko fails to carry his burden to show the court's sentence would have been different under the proper standard range. Parker, 132 Wn.2d at 189. In turn, Milko fails to establish a "fundamental defect that inherently resulted in a complete miscarriage of justice." Heidari, 159 Wn. App. at 604.

---

[5] In contrast, our Supreme Court disapproved of a standard range difference of 50 months in relation to the imposed sentence of 120 months as it was "*far higher* than it should have been" and thus "constitutes a complete miscarriage of justice." In re Pers. Restraint of Fletcher, 3 Wn.3d 356, 361-63, 379, 552 P.3d 302 (2024) (emphasis added). Even where the Court also suggested that a standard range difference of 21 months resulted in prejudice, it did so because the trial court imposed the State's "recommend[ed] sentence at the low end of the standard range," which "resulted in a low-end sentence of 129 months instead of a low-end sentence of 108 months" under the corrected range. In re Pers. Restraint of Call, 144 Wn.2d 315, 320, 323, 327, 28 P.3d 709 (2001), overruled on other grounds by In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 872-73, 50 P.3d 618 (2002). Here, there is no evidence the court followed a low end sentence in the same manner.

2. Claim Related to the Imposition of the Exceptional Sentence

Finally, Milko's Supplemental Brief argues the court improperly imposed an exceptional sentence as its "finding that the exclusion of Milko's Florida convictions from his offender score resulted in a sentence that was clearly too lenient . . . violated [his] Sixth Amendment right to a jury trial." As this issue implicates an alleged constitutional error, Milko must show both error and actual prejudice.[6] Heidari, 159 Wn. App. at 604. We again disagree for two reasons.

First, as Milko acknowledges, "this [claim] was not raised in Milko's PRP" and would be time barred under RCW 10.73.090(1) unless he can show that the judgment and sentence is facially invalid. He cannot.

Our Supreme Court "has never held a judgment facially invalid so long as it did not exceed the sentencing court's statutory authority." In re Pers. Restraint of Toledo-Sotelo, 176 Wn.2d 759, 767, 297 P.3d 51 (2013). "For a judgment to exceed the court's statutory authority, we require more than an error that 'invite[s] the court to exceed its authority'; the sentencing court must actually pass down a sentence not authorized under the SRA." Id. (quoting Coats, 173 Wn.2d at 136).

The legislature authorized indeterminate sentencing for completed and attempted rape in the first degree, for which Milko was convicted. RCW 9.94A.507(1)(a)(i), (iii); In re Pers. Restraint of Forcha-Williams, 200 Wn.2d 581, 584-85, 520 P.3d 939 (2022). Rape in the first degree is a class A felony that carries a maximum sentence of life in prison. RCW 9A.44.040(2); RCW 9A.20.021(1)(a).

---

[6] Our holding on this issue is unchanged even if this issue is construed to fall under the heightened nonconstitutional error standard. Heidari, 159 Wn. App. at 604.

14

Thus, the present appeal is more similar to State v. Clarke, 156 Wn.2d 880, 891, 134 P.3d 188 (2006), which involved potential facially invalidity in an indeterminate sentence, as opposed to cases Milko cites, such as State v. Eller, 29 Wn. App. 2d 537, 540, 546, 541 P.3d 1001 (2024), which involved potential facially invalidity in a case with a statutory maximum sentence of 120 months.

In imposing an exceptional sentence of 300 months, Milko's judgment and sentence is not facially invalid as the court did not impose a sentence that exceeded its statutory authority because the court "exercised power that it" had, i.e., to impose up to a life sentence. State v. Fletcher, 19 Wn. App. 2d 566, 573, 497 P.3d 886 (2021). Thus, this claim is time-barred.

Second, even if this claim is not time-barred, Milko does not show prejudice. The court supported its exceptional sentence with three aggravators. First, the court noted that the "jury unanimously found beyond a reasonable doubt that the defendant committed the crimes soon after being released from incarceration." Second, as Milko emphasizes, the court found that "the defendant's prior unscored foreign criminal history results in a presumptive sentence that is clearly too lenient in light of the purpose of the" Sentencing Reform Act (SRA), chapter 9.94A RCW. Finally, the court held that "the defendant committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." The second and third aggravators were "alleged by the State" and "found by the court" without the jury.

As Milko acknowledges, the court further found each aggravator "*independently and sufficiently* justifies an exceptional sentence above the

standard range." (Emphasis added.) As Milko's counsel confirmed at oral argument, he only challenges the court's foreign conviction aggravator and not the other two. Wash. Ct. of Appeals oral argument, <u>In re Pers. Restraint of Milko</u>, No. 87066-1-I (Mar. 11, 2025), at 3 min., 46 sec. through 4 min., 8 sec. <u>video recording by</u> TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/?clientID=9375922947&eventID=2025031254.[7]

In turn, Milko fails to establish "actual prejudice" as his exceptional sentence is independently supported by at least one of the other two aggravators, including the recent recidivism aggravator found by the jury, even if the court's foreign conviction aggravator arguendo should have been determined by a jury. <u>Heidari</u>, 159 Wn. App. at 604.

### 3. <u>Milko's Remaining Initial PRP Claims</u>

Milko's Initial PRP also presents numerous other claims such as ineffective assistance of counsel claims against both his trial and appellate counsel, a speedy trial claim, a merger claim, and alleges the court failed to respond to his motion to proceed pro se. While we also diligently reviewed the merits of these claims, we must reject them as insufficiently argued due to Milko's failure to substantively discuss the record or binding authority, including his failure to engage in the required analysis for his ineffective assistance and speedy trial claims. <u>Brennan</u>, 117 Wn. App. at 802; <u>State v. Sardinia</u>, 42 Wn. App. 533, 540, 713 P.2d 122

---

[7] Milko's reliance on <u>State v. Smith</u>, 123 Wn.2d 51, 864 P.2d 1371 (1993) is inapposite. There, the court held that, "[g]iven the great disparity between the presumptive sentence and the exceptional sentence, it is unclear whether the trial judge would have imposed the same sentence had he considered only the two valid aggravating factors." <u>Id.</u> at 58. Specifically, the court had imposed an exceptional sentence of 100 months for each burglary count which had a standard range of 43 to 57 months. <u>Id.</u> at 54.

(1986); State v. Ollivier, 178 Wn.2d 813, 826, 312 P.3d 1 (2013).

Additionally, all of Milko's above-listed remaining Initial PRP claims fail to specifically or substantively argue prejudice as is his burden. Delgado, 160 Wn. App. at 912; Heidari, 159 Wn. App. at 604; In re Pers. Restraint of Harvey, 3 Wn. App. 2d 204, 215, 415 P.3d 253 (2018).

Again, relief by way of PRPs is "extraordinary" and is not a "substitute for [the] appeal" Milko already litigated. Meirhofer, 182 Wn.2d at 648. Thus, Milko must meet "'significant threshold[s]'" to receive relief and his generalized arguments failed to do so here. Id. (quoting Grantham, 168 Wn.2d at 211).

III.    CONCLUSION

We deny Milko's petition for relief.

Díaz, J.

WE CONCUR:

Feldman, J.

Mann, J.

17